OPINION
{¶ 1} In this case, Robert Hayden appeals from a trial court decision rejecting Hayden's application for DNA testing. As a single assignment of error, Hayden claims that "[t]he trial court abused its discretion when it failed to follow the procedures of 2953.74(A) rejecting Appellant's application for DNA testing." After reviewing the record and applicable law, we find the assignment of error without merit.
 {¶ 2} In 1991, we affirmed Hayden's conviction on one count of rape, with a specification of a prior felony conviction. SeeState v. Hayden (Sept. 27, 1991), Montgomery App. No. 12220, 1991 WL 215065, *1. The complaining witness in the case was a woman who had lived with Hayden and her two children, first in Troy, Ohio, and then in Dayton, Ohio. The victim testified that she stopped having sexual relations with Hayden after he made threats to injure her. However, forced sexual contact occurred in November, 1989, and again in December, 1989. On the latter occasion, Hayden allegedly forced the victim to have intercourse after she refused to watch a pornographic movie with him. Id. At the time of the rape, Hayden and the victim were still living together.
 {¶ 3} We noted in our opinion that the medical evidence was inconclusive as a result of a similarity of blood types. Id. at *2. We also commented that the critical question before the court was the credibility of witnesses. Id. Specifically, the only direct evidence of the rape came from the victim, and the contrary evidence was hearsay produced by those who had heard Hayden simply deny the offense. Id. In this regard, we stressed that "[t]he conflict of evidence of the offense is created by a self-serving statement made to others, with virtually no factual information." Id.
 {¶ 4} In 1993, Hayden filed a petition for writ of habeas corpus to have the rape conviction set aside. The allegation in the habeas case was that the prosecutor had withheld crucial evidence, i.e., "pubic combings from the victim that would show the crime was committed by a [C]aucasian rather than an African American." Hayden v. Morris (Mar. 16, 1994), Ross App. No. 93CA1974, 1994 WL 88940, *1 (parenthetical correction supplied). The Fourth District Court of Appeals rejected the claim because it had been raised in Hayden's prior appeal. Id. at *2. In this context, the Fourth District noted that:
 {¶ 5} "[i]n the first claim of error, Hayden raises an evidentiary matter, i.e., that the criminologist's report indicated the victim's pubic hair sample contained the hair of a [C]aucasian. * * * [The Ohio Supreme Court has said that] `once a claimed irregularity at trial is challenged on direct appeal or through a proceeding in postconviction relief * * * the issue may not be later relitigated by way of habeas corpus.'" Id. at *2 (parenthetical correction supplied).
 {¶ 6} Subsequently, in 1997, we held that Hayden had presented sufficient evidence on a claim of ineffective assistance of trial counsel to warrant a hearing. State v.Hayden (Dec. 5, 1997), Montgomery App. No. 16497, 1997 WL 752614, *2. In that instance, Hayden had filed a petition for post-conviction relief, claiming that he did not discover the existence of the forensic report about the pubic hairs until 1992 when the trial court gave him access to certain records. He also claimed the issue was not raised on direct appeal because the evidence was contained in a Miami Valley Crime Laboratory report that was not presented at trial and was not included in the record. Id. at *1.
 {¶ 7} After reviewing the trial court record, we noted that a criminologist from Miami Valley Regional Crime Lab had testified about seminal fluid and about blood and saliva standards from both the victim and the defendant. The criminologist "could only conclude that she could not exclude the defendant as the donor of the sperm recovered." Id. However, the criminologist offered no testimony about the pubic hairs. As a result, we concluded that Hayden was entitled to a hearing on this claim. Id. at 2.
 {¶ 8} The matter was returned to the trial court, which held a hearing and denied the petition for post-conviction relief. We then affirmed the trial court's decision. See State v. Hayden
(July 16, 1999), Montgomery App. No. 17649, 1999 WL 960968. Of particular interest is the fact that we rejected Hayden's claim that trial counsel had been ineffective for failing to offer evidence about the Caucasian pubic hairs at trial. In this context, we observed that:
 {¶ 9} "[b]ecause Hayden is not Caucasian, he could not be the source of Caucasian pubic hairs that were obtained from the rape victim. That fact reasonably supports a resulting inference that if the victim was raped the perpetrator was a Caucasian, and not Hayden. However, evidence produced at the hearing permits a finding that the victim herself could have been the source of the hairs, which negates the inference that Hayden was not the perpetrator. The evidence thus creates no reasonable probability that, had it been introduced, a different result probably would have occurred. Therefore, prejudice is not demonstrated." Id. at *2.
 {¶ 10} More than five years later, or on September 22, 2004, Hayden filed an application with the trial court, requesting DNA testing. In the application, Hayden asked for DNA testing of pubic hairs, semen, and fibers that were collected from the victim. When asked to explain why a DNA test would have changed the outcome of his case, Hayden said that:
 {¶ 11} "[a]t trial the prosecutor stated in his closing, that the semen found was that of the defendant but, there was no test available to determine who that semen belong (sic) too (sic). However, today, we can test the semen, pubic hairs and fibers, this will clearly show that the defendant is not the source or donor of the semen, pubic hairs found on the alleged victim. This critical evidence would clear the defendant and would have changed the out come (sic) of the proceedings, upon testing the pubic hairs."
 {¶ 12} After review, the trial court rejected the application for DNA testing. The court noted that the forensic scientist had testified at both the trial and the post-conviction hearing that DNA tests were performed, but were inconclusive as to the exclusion of the Defendant. In other words, the DNA tests did not and could not exclude Hayden as the perpetrator. The court also noted that its own prior decision had answered the question of whether DNA testing would have changed the outcome of the case, i.e., the court had previously found no reasonable probability that testing would alter the outcome.
 {¶ 13} On appeal, Hayden claims the trial court's denial of DNA testing was an abuse of discretion because the court failed to follow the procedures in R.C. 2953.74(A). We disagree.
 {¶ 14} Postconviction DNA testing for eligible inmates is addressed in R.C. 2953.71 through R.C. 2953.83. The definition section for these statutes is R.C. 2953.71. Under R.C. 2953.71(A)and (B), DNA testing is limited to biological material only, or any product of a human body containing DNA. Hayden requested DNA testing of semen, pubic hairs, and fibers. However, only the semen and pubic hairs could have been tested.
 {¶ 15} R.C. 2953.72 provides that eligible inmates may submit applications for DNA testing, and division (C)(1) of that section establishes criteria for preliminary eligibility. There is no dispute that Hayden met these criteria and was eligible to request testing. This does not mean the application should have been granted; it simply means that Hayden was among the group of individuals who could ask for testing. For example, one criterion is that the individual be in prison, serving a prison term for the offense that is the subject of the DNA request. See R.C.2953.72(C)(1)(c).
 {¶ 16} R.C. 2953.73 outlines certain procedures for submitting applications, for responses to applications, and for court decisions on whether applications will be accepted or rejected. After an application has been submitted, the trial court must decide whether to accept or reject the application. In making this decision, the court must follow procedures outlined in R.C. 2953.73(D). Among other things, the court must expedite its review, and must make its decision in accordance with criteria and procedures set forth in R.C. 2953.74 to R.C.2953.81. The court must also consider the application, supporting affidavits and documentary materials, and all the files and records pertaining to the applicant. However, the court does not have to hold an evidentiary hearing. The court's final act is to "enter a judgment and order that either accepts or rejects the application and that includes within the judgment and order the reasons for the acceptance or rejection as applied to the criteria and procedures set forth in sections 2953.71 to 2953.81
of the Revised Code. * * *" R.C. 2953.73(D).
 {¶ 17} Detailed grounds for accepting or rejecting applications can be found in R.C. 2953.74. Under R.C. 2953.74(A), the court must reject the application if a prior definitive DNA test has been conducted regarding the same biological evidence that the inmate seeks to have tested. If a prior inconclusive test has been conducted, the court has discretion to accept or reject the application.
 {¶ 18} Because the semen was previously tested and was inconclusive, the trial court had discretion to accept or reject Hayden's request for DNA testing of semen. Hayden does not challenge the court's decision on this point; instead, he claims that the court should have tested the pubic hairs, which were Caucasian and were not tested prior to trial.
 {¶ 19} In this regard, R.C. 2953.74(C) contains further factors that restrict a court's ability to accept applications for DNA testing. These factors apply whether or not a prior DNA test has been performed. Some factors concern items like scientific suitability of the biological material and the chain of custody. See R.C. 2953.74(C)(1), (2), and (6). Others are substantive, and require the court to find: (1) that at the trial stage, the identity of the person who committed the crime was an issue: (2) that one or more defense theories asserted at the trial stage were such that if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative; and (3) that exclusion results will be outcome determinative regarding the particular inmate. R.C.2953.74(C)(3), (4), and (5). If any of the six factors listed in R.C. 2953.74(C) is not satisfied, the court is precluded from accepting the application. In other words, if the court finds, for example, that the identity of the perpetrator was not at issue at trial, DNA testing will not be allowed, even if all the other criteria are satisfied. Likewise, if the court finds that the test would not be outcome determinative, the application must be rejected.
 {¶ 20} "Outcome determinative" is defined in the postconviction DNA testing statutes to mean that:
 {¶ 21} "had the results of DNA testing been presented at the trial of the subject inmate requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the inmate is an eligible inmate and is requesting the DNA testing * * *, no reasonable factfinder would have found the inmate guilty of that offense * * *." R.C. 2953.71(L).
 {¶ 22} Consistent with R.C. 2953.71(L) and R.C.2953.74(C)(5), the trial court held that a reasonable factfinder would have found Hayden guilty of rape even if the pubic hairs had been tested, and had excluded Hayden as the source. The court did not make specific findings on the remaining factors in R.C.2953.74(C). Therefore, the question becomes whether the lack of findings requires us either to reverse the decision or to dismiss the appeal.
 {¶ 23} If a court's journal entry is insufficient to inform an applicant of reasons for the decision, or to provide a basis for review, the appeal will be dismissed for lack of a final appealable order. State v. Newell, Cuyahoga App. No. 85280, 2005-Ohio-2583, and State v. Hickman, Summit App. No. 22279, 2005-Ohio-472. Both Newall and Hickman involved denials of postconviction applications for DNA testing, and both appeals were dismissed for lack of a final appealable order. 2005-Ohio-2583, at ¶ s 3 and 6, and 2005-Ohio-472, at ¶ s 3 and 10. However, the journal entries in the cases did not contain any reasons whatsoever for the decisions; they were simply one-line statements indicating that the applications had been denied. Id.
 {¶ 24} In contrast, the trial court's journal entry in the present case was sufficient to inform Hayden of the reasons for the decision, and was also adequate for purposes of appellate review. Notably, a trial court does not need to find that an application fails on all six factors in R.C. 2953.74(C), or even on more than one ground. Failure on only one ground precludes the court from accepting the application.
 {¶ 25} After reviewing the record, we agree with the trial court that an exclusion result from DNA testing of the pubic hairs would not be outcome determinative of Hayden's guilt. As a matter of fact, Hayden has already been excluded from any connection with the pubic hairs because they were from a Causasian and Hayden is African American. We noted this fact in our 1999 decision when we said that:
 {¶ 26} "[b]ecause Hayden is not Caucasian, he could not be the source of Caucasian pubic hairs that were obtained from the rape victim. That fact reasonably supports a resulting inference that if the victim was raped the perpetrator was a Caucasian, and not Hayden. However, evidence produced at the hearing permits a finding that the victim herself could have been the source of the hairs, which negates the inference that Hayden was not the perpetrator. The evidence thus creates no reasonable probability that, had it been introduced, a different result probably would have occurred." Hayden, 1999 WL 960968, at *2.
 {¶ 27} Consequently, because a reasonable-fact finder could have found Hayden guilty of the offense of rape even if he were excluded from any connection with the pubic hairs, the trial court correctly rejected the application for DNA testing.
 {¶ 28} In responding to Hayden's argument, the State points out that the postconviction DNA testing statutes provide only for a comparison between the inmate's biological material and the biological material collected from the victim or the crime scene. The State contends, therefore, that such a comparison would simply prove what is already known, i.e., that the pubic hairs did not come from Hayden. Moreover (as we have said), since the hairs could have come from the victim, a reasonable fact-finder could have found Hayden guilty of rape.
 {¶ 29} We agree with the State. As an example, R.C.2953.72(A)(10) states that "the most basic aspect of sections2953.71 to 2953.81 is that in order for DNA testing to occur, there must be an inmate sample against which other evidence may be compared." (Emphasis added.) R.C. 2953.71(G) also defines "exclusion" or "exclusion result" as "a result of DNA testing that scientifically precludes or forecloses the subject inmate as a contributor of biological material recovered from the crime scene or victim * * *." Thus, the State is correct when it says that the comparison is between the inmate's DNA and that of the material recovered from the victim or crime scene.
 {¶ 30} As a final matter, we should also point out that Hayden's focus on the origin of the pubic hairs — or for that matter, even the semen, makes little sense in the context of this case. This was not a situation where the victim was attacked by a stranger or where the identity of the rapist was at issue. Hayden and the victim lived together, and she claimed that he had sexually assaulted her after she refused to watch a pornographic movie. Therefore, the issue would have been whether the victim consented to sex. When we originally reviewed this case on appeal, we stated that the crucial issue was the credibility of witnesses. Hayden, 1991 WL 215065, at *1. We stressed that the only direct evidence of the rape came from the victim, and that the contrary evidence was hearsay produced by those who had heard Hayden simply deny the offense. Id. Furthermore, the conflict was "created by a self-serving statement made to others, with virtually no factual information." Id.
 {¶ 31} Because the rapist's identity was not at issue, the origin of the pubic hairs has little relevance. Notably, the trial court could have used this fact as an alternate ground for rejecting the application. See R.C. 2953.74(C)(3) (indicating that one of the six factors needed for approval of DNA testing is that the identity of the person who committed the offense was an issue at trial).
 {¶ 32} Based on the preceding discussion, we find that the trial court was correct in rejecting the application for DNA testing. Accordingly, the single assignment of error is overruled, and the judgment of the trial court is affirmed.
Wolff, J., and Grady, J., concur.