The STATE of Ohio, Appellee,

v.

BUEHLER, Appellant.

[Cite as *State v. Buehler,* 164 Ohio App.3d 209, 2005-Ohio-5717.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 85796.

Decided Oct. 27, 2005.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Mary McGrath, Assistant Prosecuting Attorney, for appellee.

David H. Bodiker, Ohio Public Defender, and James R. Foley, Assistant Public Defender, for appellant.

COLLEEN CONWAY COONEY, Judge.

{¶ 1} In 1985, a jury convicted appellant, Paul Buehler, of aggravated murder and aggravated robbery. He was sentenced to life imprisonment on the murder charge, a sentence to run consecutively to an indefinite term of ten to 25 years on the robbery. We affirmed the conviction. The Ohio Supreme Court denied his motion for leave to appeal. This court then denied his application to reopen his appeal. *State v. Buehler* (Mar. 27, 1998), Cuyahoga App. No. 51522, 1998 WL 158866. In 2004, Buehler filed an application for DNA testing. The state filed a brief in opposition to his application. The trial court subsequently denied Buehler's application. Buehler now appeals, raising three assignments of error; the first and second assignments will be discussed together. Finding merit to the appeal, we reverse and remand for further proceedings.

{¶ 2} In his first assignment of error, Buehler argues that the trial court's denial of his application is contrary to law because the court failed to comply with the requirements of R.C. 2953.73(D). We agree, but our decision is based on different grounds. In his second assignment of error, Buehler contends that the trial court erred when it denied his application without complying with R.C. 2953.75(A) and (B). We agree and also find that by failing to comply with R.C. 2953.74, the trial court did not comply with R.C. 2953.73(D).

{¶ 3} In his first assignment of error, Buehler argues that this court should dismiss the appeal for lack of a final appealable order, reinstate his

application for DNA testing, and remand the case to the trial court. We disagree.[1]

{¶ 4} R.C. 2953.72(C)(1) allows an inmate to request DNA testing if all of the following apply:

(a) The offense for which the inmate claims to be an eligible inmate is a felony that was committed prior to the effective date of this section, and the inmate was convicted by a judge or jury of that offense.

(b) The inmate was sentenced to a prison term or sentence of death for [a] felony * * * and * * * is in prison serving that prison term * * *.

(c) On the date on which the application is filed, the inmate has at least one year remaining on the prison term * * *.

{¶ 5} The state concedes that Buehler is eligible to request DNA testing. After an eligible inmate submits an application for DNA testing, the trial court has the jurisdiction to accept or reject the application. R.C. 2953.73(D) provides:

The court shall expedite its review of the application. The court shall make the determination in accordance with the criteria and procedures set forth in sections 2953.74 to 2953.81 of the Revised Code and, in making the determination, shall consider the application, the supporting affidavits, and the documentary evidence and, in addition to those materials, shall consider all the files and records pertaining to the proceedings against the applicant, including, but not limited to, the indictment, * * * the journalized records of the clerk of the court, and the court reporter's transcript and all responses to the application filed under division (C) of this section by a prosecuting attorney or the attorney general, unless the application and the files and records show the applicant is not entitled to DNA testing, in which case the application may be denied. * * * Upon making its determination, the court shall enter a judgment and order that either accepts or rejects the application and that includes within the judgment and order the reasons for the acceptance or rejection as applied to the criteria and procedures set forth in sections 2953.71 to 2953.81 of the Revised Code * * *.

{¶ 6} Buehler argues that the court failed to make the required finding in its journal entry. The subject journal entry states:

---

1. Interestingly, Buehler filed the within appeal, which he now requests we dismiss. We note that if we dismissed this case for lack of a final appealable order, we would be precluded from ordering that his application be reinstated or remanding the case to the trial court for further action. If this court dismisses a case for lack of a final appealable order, we can issue no further orders directing the trial court. *State v. Wells* (Oct. 22, 1998), Cuyahoga App. No. 73481, 1998 WL 741930.

Application for DNA testing is denied. DNA evidence that might indicate only biological material of Hedrick[2] on deceased person would be consistent with the State's theory and evidence in the case, and thus not outcome determinative.

{¶ 7} In *State v. Newell*, Cuyahoga App. No. 85280, 2005-Ohio-2853, 2005 WL 1364836, this court dismissed an appeal for lack of a final appealable order because the trial court failed to set forth any reasons why the appellant's application was denied. In the instant case, the trial court found that if only Hendrick's DNA were found under the victim's fingernails, that finding would be consistent with the state's theory and the evidence. The journal entry sufficiently apprises Buehler of the reason the court denied his application. Furthermore, the journal entry enables this court to properly review Buehler's appeal on the merits. The trial court found that an exclusionary result would not determine the outcome of the case, allowing this court to review whether the trial court erred.

{¶ 8} Therefore, we hold that the trial court's decision is a final appealable order and proceed to the merits of the case.

{¶ 9} The trial court did not comply with R.C. 2953.73(D), not for lack of a final appealable order, but because it failed to comply with the requirements outlined in R.C. 2953.74 and 2953.75.

{¶ 10} R.C. 2953.75 provides:

If an eligible inmate submits an application for DNA testing under section 2953.73 of the Revised Code, the court shall require the prosecuting attorney to use reasonable diligence to determine whether biological material was collected from the crime scene or victim of the offense for which the inmate is an eligible inmate and is requesting the DNA testing against which a sample from the inmate can be compared and whether the parent sample of that biological material still exists at that point in time.

{¶ 11} R.C. 2953.75(B) requires the state to prepare a report regarding the availability of DNA samples and to file it with the court. We agree with Buehler that the duties described in R.C. 2953.75 are not conditioned upon the court's granting the application, but rather are mandated upon the submission of the application.

{¶ 12} Moreover, R.C. 2953.74 further restricts the trial court's ability to accept applications for DNA testing by detailing what the trial court must consider in accepting or rejecting an inmate's application. *State v. Hayden*,

---

**2.** Rodney Hedrick was Buehler's codefendant. He pleaded guilty and testified against Buehler at trial.

Montgomery App. No. 20747, 2005-Ohio-4025, 2005 WL 1846521. R.C. 2953.74(C) provides that the court may accept the inmate's application only if it first finds that all the following apply:

(1) The court determines pursuant to section 2953.75 of the Revised Code that biological material was collected from the crime scene or the victim of the offense for which the inmate is an eligible inmate and is requesting the DNA testing and that the parent sample of that biological material against which a sample from the inmate can be compared still exists at that point in time.

(2) The testing authority determines all of the following pursuant to section 2953.76 of the Revised Code regarding the parent sample of the biological material described in division (C)(1) of this section:

(a) The parent sample of the biological material so collected contains scientifically sufficient material to extract a test sample.

(b) The parent sample of the biological material so collected is not so minute or fragile as to risk destruction of the parent sample by the extraction described in division (D)(2)(a) of this section; provided that the court may determine in its discretion, on a case-by-case basis, that, even if the parent sample of the biological material so collected is so minute or fragile as to risk destruction of the parent sample by the extraction, the application should not be rejected solely on the basis of that risk.

(c) The parent sample of the biological material so collected has not degraded or been contaminated to the extent that it has become scientifically unsuitable for testing, and the parent sample otherwise has been preserved, and remains, in a condition that is scientifically suitable for testing.

(3) The court determines that, at the trial stage in the case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing, the identity of the person who committed the offense was an issue.

(4) The court determines that one or more of the defense theories asserted by the inmate at the trial stage in the case described in division (C)(3) of this section or in a retrial of that case in a court of this state was of such a nature that, if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative.

(5) The court determines that, if DNA testing is conducted and an exclusion result is obtained, the results of the testing will be outcome determinative regarding that inmate.

(6) The court determines pursuant to section 2953.76 of the Revised Code from the chain of custody of the parent sample of the biological material to be tested and of any test sample extracted from the parent sample, and from the totality of circumstances involved, that the parent sample and the extracted

test sample are the same sample as collected and that there is no reason to believe that they have been out of state custody or have been tampered with or contaminated since they were collected.

{¶ 13} R.C. 2953.74 governs those situations where a prior DNA test has been performed; however, it applies to all applications including those without prior testing. *Hayden*, 2005-Ohio-4025, ¶ 19. Further, if any of the factors in R.C. 2953.74 are not satisfied, the court is precluded from accepting the application. Id.

{¶ 14} R.C. 2953.74(C)(1) requires the court to consider whether there are any comparison samples pursuant to R.C. 2953.75. The trial court cannot make that determination if it has not received nor reviewed the state's report.

{¶ 15} This court recently addressed a similar issue in *State v. Hightower*, Cuyahoga App. Nos. 84248 & 84398, 2005-Ohio-3857, 2005 WL 1793522, and found that because the trial court did not follow the mandates of R.C. 2953.76, it did not comply with 2953.73(D). R.C. 2953.76 mandates that the court require the prosecuting attorney to prepare a report detailing the quality, quantity, chain of custody, and reliability of any pertinent DNA samples. This court held that the trial court's denial of the defendant's application for DNA testing was premature because the court rendered its decision prior to the state's filing its report. Id. at ¶ 8.[3] Likewise, R.C. 2953.75 mandates that the court require the state to file a report regarding the availability of DNA samples prior to the court's ruling on an inmate's application.

{¶ 16} A review of the record in this case reveals that the state did not file a report pursuant to R.C. 2953.75. In its brief in opposition to Buehler's motion, the state indicated that it would file its report after the court made a ruling on the application. Pursuant to R.C. 2953.74(C), the court is precluded from making its determination without the state's report.

{¶ 17} Therefore, we hold that R.C. 2953.74(C) requires the court to follow the mandates of R.C. 2953.75 prior to making its decision on an inmate's application. Failure to do so results in a violation of R.C. 2953.73(D) and is reversible error.

{¶ 18} Accordingly, because the trial court did not adhere to the mandates of R.C. 2953.74, 2953.75, and 2953.76, the first and second assignments of error are sustained.

---

3. We also note that the trial court in the instant case did not order the state to file a report pursuant to R.C. 2953.76.

{¶ 19} In his third assignment of error, Buehler argues that the denial was contrary to law because if a DNA test excluded Buehler as the source of biological matter found under the victim's fingernails, the outcome of the case would be different. Because we hold that the trial court prematurely denied Buehler's application, we find that this issue is not ripe for our review.

{¶ 20} Therefore, we sustain the first and second assignments of error and overrule the third assignment of error.

Judgment reversed
and cause remanded.

BLACKMON, A.J., concurs.

CORRIGAN, J., dissents.

MICHAEL J. CORRIGAN, Judge, dissenting.

{¶ 21} I respectfully dissent from the majority's decision to remand Buehler's application for DNA testing. I believe that the majority's very narrow reading of the DNA testing statutes fails to consider the impact of other statutory provisions that obviate the need for the state to determine whether DNA exists as a predicate for further proceedings by the court.

{¶ 22} While I agree that R.C. 2953.75 requires the prosecuting attorney to determine whether biological material exists upon the application for DNA testing, that section cannot be read in isolation from other aspects of the DNA testing statutes. R.C. 2953.74(B)(1) states:

{¶ 23} "(B) If an eligible inmate submits an application for DNA testing under section 2953.73 of the Revised Code, the court may accept the application only if one of the following applies:

{¶ 24} "(1) The inmate did not have a DNA test taken at the trial stage in the case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing regarding the same biological evidence that the inmate seeks to have tested, the inmate shows that DNA exclusion would have been outcome determinative at that trial stage in that case, and, at the time of the trial stage in that case, DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available."

{¶ 25} In *State v. Wilkins,* Summit App. No. 22493, 2005-Ohio-5193, 2005 WL 2401593, ¶ 18–19, the Ninth District very recently considered this precise question and, in disagreeing with the position taken by the majority, stated:

{¶ 26} "However, [in *State v. Hightower,* Cuyahoga App. Nos. 84248 & 84398, 2005-Ohio-3857] the Eighth District did not conduct an analysis of R.C.

2953.74(B), which we feel is essential in determining whether, and at what point, the trial court erred in rejecting an application. As we discussed above, Defendant did not meet the outcome determinative criteria of R.C. 2953.74(B)(1). In reading 2953.74 to 2953.81 in pari materia, we find that the trial court was not required to proceed further than 2953.74(B) since Defendant did not meet the requirements of B(1) or (2). If a petitioner meets the requirements of 2953.74(B)(1) or (2), then the trial court would proceed to 2953.74(C).

{¶ 27} "R.C. 2953.74(C) lists six separate factors, and the trial court may accept the application only if *all* six factors apply to the inmate. We believe that it is at this point in the statutory analysis that the trial court should require the prosecuting attorney to consult with the testing authority and prepare a report, under R.C. 2953.76, as it would be impossible for the trial court to consider whether or not a defendant meets the six factors without the state's report. The second factor of R.C. 2953.74(C) even refers to the state's report, required by R.C. 2953.76, as subsections (a), (b) and (c). We agree with defendant and the Eighth District that it would be procedural error if the trial court arrived at R.C. 2953.74(C) and denied a defendant's DNA application without requiring the state to submit a report under R.C. 2953.76. In this case, however, defendant did not meet the requirements of R.C. 2953.74(B), and, reading the statute as a whole and sequentially, this court feels that a defendant would have to first meet either R.C. 2953.74(B)(1) or (B)(2) before a trial court would consider the six factors under R.C. 2953.74(C)."

{¶ 28} The approach taken in *Wilkins* is a sensible one, for like many other areas of criminal law, it requires a threshold showing as a predicate to the relief. For example, no defendant would be entitled to appointment of counsel without a predicate showing of indigency, nor would the court order a competency examination without a showing that the defendant lacked the necessary capacity.

{¶ 29} The court took the practical step of considering the substantive basis for Buehler's application for DNA testing and concluded that even if it granted Buehler's application, the results of DNA testing would not be outcome determinative. This methodology is in the best spirit of conserving judicial resources. If Buehler's application was meritless on its face, why force the state to go to the time and expense of determining the existence of DNA? To permit any applicant to make the state scramble to assemble DNA evidence without first making a requisite showing is the judicial equivalent of the tail wagging the dog.[4]

---

4. Certainly, the majority's decision is at odds with that of the Ninth District in *Wilkins*. I have no doubt that DNA cases of this type will become more and more frequent in the future as inmates learn of this new statutory right to obtain DNA testing, so we (or the state) should certify this conflict for resolution in order to facilitate the orderly disposition of these cases.

{¶ 30} The state went forward on the theory that Hedrick beat the victim unconscious while Buehler held her from behind. Buehler then beat the unconscious victim until she died. There was evidence that the victim struggled, and it would be entirely consistent with the evidence if DNA results showed Hedrick's genetic material and not that of Buehler, for we can assume that if Buehler held the victim from behind and she struggled, it is probable that she was struggling against Hedrick as he began to beat her. Since Buehler did not attack the victim until she was unconscious, she could not have come in contact with him. Moreover, the identity of Buehler as a perpetrator was not at issue, because he had been identified by his codefendant.

{¶ 31} In short, not only would it be no surprise to learn that the victim had Hedrick's DNA under her fingernails, it would be rather surprising to learn that the genetic material did not belong to Hedrick. Thus, DNA testing would show nothing new and would most certainly not be outcome determinative. That being the case, the court did not err by not requiring the state to determine the existence of genetic material from the victim.