The STATE of Ohio, Appellee,

v.

PRICE, Appellant.

[Cite as *State v. Price,* 165 Ohio App.3d 198, 2006-Ohio-180.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050154.

Decided Jan. 20, 2006.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Scott Heenan, Assistant Prosecuting Attorney, for appellee.

David H. Bodiker, Ohio Public Defender, and James R. Foley, Assistant Public Defender, for appellant.

HILDEBRANDT, Presiding Judge.

{¶ 1} Bringing forth three assignments of error, defendant-appellant, Ronald Price, appeals from the trial court's judgment denying his application for DNA testing pursuant to R.C. 2953.71 et seq. For the following reasons, we reverse.

{¶ 2} In 1986, Price was convicted of raping a three-year-old girl and was sentenced to life in prison. During Price's trial to the bench, the resident physician who had examined the victim shortly after the rape testified that a "rape protocol kit" had been obtained and that the child had been thoroughly examined with the "appropriate specimens" taken. There was no testimony about whether any DNA analysis was performed. The remaining facts underlying Price's conviction are set forth in *State v. Price*,[1] in which this court affirmed his conviction.

{¶ 3} In June 2004, Price filed, pro se, an application for DNA testing under 2003 Sub.S.B. No. 11. S.B. No. 11 provides an opportunity for eligible inmates who are serving a prison term for a felony to apply for comparison DNA testing if the applicant can demonstrate that his exclusion as the source of biomaterial collected from a crime scene would have been outcome-determinative at his trial. The state filed an objection to Price's application, arguing that no biomaterial evidence existed to be tested. As a basis for its objection, the state relied upon Price's application, in which he had answered "no" in response to a form question that asked whether any DNA evidence had been collected or still existed.

---

1. (Aug. 10, 1988), 1st Dist. No. C–870406, 1988 WL 83493.

{¶ 4} Two months later, the Ohio Public Defender filed a notice of appearance on behalf of Price and moved for leave of court to file a response to the state's objection. In the proffered response, Price's counsel argued that the state had a duty, under R.C. 2953.75, to perform a reasonable search for any biological evidence that may have been collected as part of the criminal investigation and that Price would have no way of knowing whether that evidence had been collected or still existed.

{¶ 5} In January 2005, the trial court, citing R.C. 2953.74(C)(4), denied Price's application for DNA testing. This appeal followed.

{¶ 6} We address Price's three assignments of error out of order to facilitate our discussion. In his second assignment of error, Price argues that the "trial court erred in summarily denying [his] application for DNA testing because the trial court did not comply with the requirements of R.C. 2953.75." We agree.

{¶ 7} After an eligible inmate submits an application for DNA testing, the trial court, under R.C. 2953.73(D), shall "make the determination as to whether the application should be accepted or rejected. The court shall expedite its review of the application. The court *shall* make the determination in accordance with the criteria and procedures set forth in sections 2953.74 to 2953.81 of the Revised Code." (Emphasis added.) R.C. 2953.75(A) provides that upon the submission of an application for DNA testing, a trial court "shall require the prosecuting attorney to use reasonable diligence to determine whether biological material was collected from the crime scene or the victim * * * and whether the parent sample of that biological material still exists at that point and time." R.C. 2953.75(B) then requires the state "to prepare a report regarding the availability of DNA samples and file it with the court." [2]

{¶ 8} A review of the record here demonstrates that the trial court never ordered the state to search for any DNA samples that might have existed and to file a report in that regard. The duty upon the state to search for the DNA samples is not discretionary. Instead, it is mandated by statute when an eligible inmate submits an application for DNA testing. The state concedes that Price was an eligible inmate, but asserts that it should not have been required to search for any DNA samples still in existence because Price reported on his application that there were none. We find the state's argument unpersuasive in light of the fact that it had received Price's proffered response to its objections, which indicated that a rape protocol kit had been obtained after the attack and that "appropriate specimens" had been taken from the victim. By merely reviewing the trial transcript, the state would have realized that possible DNA samples were in existence. We also give no weight to the fact that Price responded "no"

---

2. *State v. Buehler,* 164 Ohio App.3d 209, 2005-Ohio-5717, 841 N.E.2d 831, at ¶ 11.

to a question on his application regarding the availability of any DNA samples. The state was in a better position than Price to know if any DNA samples existed. We believe that the Ohio legislature probably came to this same conclusion, since it put the burden on the state to search for DNA samples.[3]

{¶ 9} Because the trial court did not require the state to comply with R.C. 2953.75 before determining whether to grant the DNA application, we sustain Price's second assignment of error.

{¶ 10} In his first assignment of error, Price contends that the trial court erred by summarily denying his application for DNA testing because "the trial court did not comply with the requirements of R.C. 2953.73(D)." R.C. 2953.73(D) requires a trial court to state the "reasons for the acceptance or rejection" in the judgment and order denying an eligible inmate's application for postconviction DNA testing. Here, the trial court's judgment entry simply stated that Price's application for DNA testing was being denied "pursuant to R.C. 2953.74(C)(4)."

{¶ 11} R.C. 2953.74(C)(4) provides that the court may grant an eligible inmate's application for postconviction DNA testing if "the court determines that one or more of the defense theories asserted by the inmate at the trial stage [namely, that the identity of the person who committed the offense was at issue] * * * was of such a nature that, if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative."

{¶ 12} As far as we can surmise, the trial court did not engage in an analysis of any defense theories, even though Price argued mistaken identity at trial. The trial court provided no reasons for its conclusion that DNA testing would not have been outcome-determinative in this case. Because it provided no reasons, even though it was required to do so, we are unable to properly review the trial court's denial of Price's application for DNA testing.[4]

{¶ 13} Although the trial court must provide reasons in the judgment entry for the denial of an application for DNA testing, we do not hold that findings of fact and conclusions of law are required, as Price argues. In support of his argument, Price cites Ohio's postconviction statute, R.C. 2953.21, which explicitly requires a trial court to issue findings of fact and conclusions of law when denying relief. "Reasons" for the trial court's denial of an application for DNA testing are not required to be put forth in the format of findings of fact and

---

3. See R.C. 2953.75 and 2953.76.

4. See *State v. Ayers,* 8th Dist. No. 86006, 2005-Ohio-6972, 2005 WL 3549183, at ¶ 6–8 (trial court's denial of an eligible inmate's application for DNA testing reversed when the court had failed to provide reasons for its denial as required by R.C. 2953.73(D) and, instead, merely stated in the judgment entry that "defendant has failed to demonstrate that DNA testing in this matter would prove to be outcome determinative").

conclusions of law,[5] but more is required than the cursory statement in the judgment entry here.

{¶ 14} Based on the foregoing, we sustain Price's first assignment of error.

{¶ 15} We do not address Price's third assignment of error—that the trial court erred in denying his application for DNA testing because comparison DNA testing that would have excluded him "as the source of the sperm portion of the biological matter found on the vaginal swabs from the rape kit would be outcome determinative"—because it is moot. We have already held that we are unable to properly review the trial court's denial of Price's DNA application because there were no reasons provided for the denial and no reasons why the trial court concluded that DNA testing would not be outcome-determinative in this case. As an aside, we note that the state argues that DNA testing here would not be outcome-determinative because Price confessed to the rape. We can find no such confession in the transcript of the trial proceedings. Any statement that could have been construed as a confession appears from the record to have been immediately retracted.

{¶ 16} In sum, we sustain Price's first and second assignments of error. We reverse the judgment of the trial court and remand this cause for further proceedings consistent with this decision and the law.

Judgment reversed
and cause remanded.

SUNDERMANN and HENDON, JJ., concur.

---

5. See R.C. 2953.73(D); compare R.C. 2953.73(D) with 2953.21(G).