[Cite as *State v. Hayden*, 2015-Ohio-3262.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                          :
                                                       :
    Plaintiff-Appellee                        :          C.A. CASE NO.   26524
                                                       :
v.                                                     :          T.C. NO.   90CR308
                                                       :
ROBERT O. HAYDEN                                       :          (Criminal Appeal from
                                                       :           Common Pleas Court)
    Defendant-Appellant                       :
                                                       :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the   14th   day of    August   , 2015.

. . . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

ROBERT O. HAYDEN, Inmate #226-375, Chillicothe Correctional Institute, P. O. Box 5500, Chillicothe, Ohio 45601
    Defendant-Appellant

. . . . . . . . . . . .

FROELICH, P.J.

{¶ 1} Robert O. Hayden appeals from a judgment of the Montgomery County Court of Common Pleas, which denied his motion for a new trial and his application for DNA testing.   For the following reasons, the judgment of the trial court will be affirmed.

{¶ 2} In 1990, Hayden was convicted by the court of raping his girlfriend. He had a prior aggravated felony specification and was sentenced to 10 to 25 years of imprisonment. DNA tests conducted at the time were inconclusive, and no DNA evidence was presented. We affirmed his conviction. *See State v. Hayden*, 2d Dist. Montgomery No. 12220, 1991 WL 215065 (Sept. 27, 1991) (*Hayden I*).

{¶ 3} In 1996, Hayden filed a petition for postconviction relief related to pubic hairs recovered from the victim; Hayden had previously been excluded as a source of the pubic hairs, but it was possible that they belonged to the victim. (No evidence about the pubic hairs had been presented at trial.) The trial court denied the petition for postconviction relief without a hearing, but we reversed and remanded for a hearing. *State v. Hayden*, 2d Dist. Montgomery No. 16497, 1997 WL 752614 (Dec. 5, 1997) (*Hayden II*).

{¶ 4} In May 1998, while the petition for postconviction relief remained pending, additional DNA testing was performed on the vaginal aspirate recovered from the victim. The results were again inconclusive: Hayden could not be definitively identified as the source of the sperm fraction, but he likewise could not be excluded. After a hearing, the trial court again denied his petition for postconviction relief, and we affirmed that judgment on appeal. *State v. Hayden*, 2d Dist. Montgomery No. 17649, 1999 WL 960968 (July 16, 1999) (*Hayden III*).

{¶ 5} Between 2001 and 2010, Hayden filed numerous petitions for postconviction relief and applications for postconviction DNA testing, all of which were denied, and those judgments were affirmed on appeal. *See State v. Hayden*, 2d Dist. Montgomery No. 20657, 2005-Ohio-4024 (*Hayden IV*); *State v. Hayden*, 2d Dist. Montgomery No. 20747, 2005-Ohio-4025 (*Hayden V*); *State v. Hayden*, 2d Dist.

Montgomery No. 21764, 2007-Ohio-5572 (*Hayden VI*); *State v. Hayden*, 2d Dist. Montgomery No. 23620, 2010-Ohio-3908 (*Hayden VII*).

{¶ 6} In 2011, Hayden filed a motion for discovery of DNA evidence in the possession of the Bureau of Criminal Investigation and for postconviction DNA testing. The trial court denied the motion for discovery on the ground that it was barred by res judicata, concluded that the request for DNA testing was moot, and stated that Hayden had not used the proper form to submit his request for DNA testing. On appeal, we disagreed with the trial court's conclusion that Hayden's application for DNA testing was barred by res judicata; we observed that the post-conviction DNA statutes in effect at that time had not been in effect and/or had been amended since the time of the prior DNA testing in his case, such that the earlier cases had been reviewed under a different legal standard. We agreed, however, with the trial court's conclusion that Hayden had failed to use the proper form to request DNA testing, and we concluded that the trial court had acted within its discretion in denying his request on that basis. *State v. Hayden*, 2d Dist. Montgomery No. 24992, 2012-Ohio-6183 (*Hayden VIII*).

{¶ 7} In 2013, Hayden filed an application for DNA testing (on the form provided by the attorney general) and a motion for a new trial. The trial court denied his application for DNA testing on the grounds that "an exclusion result" would not be "outcome determinative" and that the identity of the perpetrator had not been at issue at trial. The trial court also denied his motion for new trial.

{¶ 8} Hayden appeals from the trial court's judgment, raising three assignments of error.

{¶ 9} The first two assignments relate to Hayden's application for DNA testing, and

we will address them together.

**The trial court denial of his application is contrary to law R.C. 2953.72(C)(1) and R.C. 2953.74(B).**

**The trial court abused its discretion when it failed to follow [sic] the definitive DNA test pursuant to R.C. 2953.71(U).**

{¶ 10} Hayden contends that his application for additional DNA testing, including comparison of any unidentified DNA samples recovered from the victim to all persons registered in the combined DNA index system (CODIS) maintained by the Federal Bureau of Criminal Investigation, as provided in R.C. 2953.74(E), should have been granted. As stated above, the trial court denied the application on the bases that the DNA testing would not be outcome-determinative and that the identity of the perpetrator had not been at issue in the case.

{¶ 11} Since 2003, Ohio law has provided specific procedures for postconviction DNA testing. *See* Am.Sub.S.B. No. 11; Am.Sub.S.B. No. 262; Am.Sub.S.B. No. 77. *See also* former and current R.C. 2953.71 through R.C. 2953.83. Recent statutory enactments which allow for the possibility of postconviction DNA testing recognize that DNA testing technologies have advanced very rapidly, and that changes in the testing procedures have produced more accurate and/or sophisticated results than were previously possible. Courts have also recognized this fact, noting "the law's never-ending quest to ensure that no innocent person be convicted." *State v. Emerick*, 2d Dist. Montgomery No. 24215, 2011-Ohio-5543, ¶ 31 (*Emerick II*),[1] citing *State v. Ayers*, 185 Ohio App.3d 168, 2009-Ohio- 6096, 923 N.E.2d 654, ¶ 24 (8th Dist.). *See*

---

[1] An earlier case, *State v. Emerick*, 170 Ohio App.3d 647, 2007-Ohio-1334, 868 N.E.2d 742, ¶ 12 (2d Dist.), to which we will refer as *Emerick I,* is cited below.

*also State v. Prade*, 126 Ohio St.3d 27, 2010-Ohio-1842, 930 N.E.2d 287, ¶ 20. In an effort to address these advances, the Ohio legislature established "a mechanism and procedures for the DNA testing of certain inmates" in 2003; the statutory scheme was amended in 2004, 2006, and 2010. *Emerick II* at ¶ 23. R.C. 2953.72(C)(1) establishes the criteria for preliminary eligibility, and R.C. 2953.74 outlines additional factors that must be satisfied before a trial court "may accept an application" for DNA testing. *See* R.C. 2953.74(B) and (C).

{¶ 12} The trial court "has discretion on a case-by-case basis" to accept or reject an eligible inmate's application for DNA testing. R.C. 2953.74(A). We therefore review the trial court's denial of a motion for further DNA testing for an abuse of discretion. An abuse of discretion implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. *State v. Emerick*, 2d Dist. Montgomery No. 24215, 2011-Ohio-5543, ¶ 24 (Emerick II), citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 130.

{¶ 13} Pursuant to R.C. 2953.72(C), an offender is eligible to request DNA testing if the offense for which the offender claims to be an eligible offender is a felony, the offender was convicted by a judge or jury of that offense, and the offender is currently serving a sentence for that offense. Hayden satisfies these requirements.

{¶ 14} R.C. 2953.73 sets out the process for the submission of the application.

If an eligible offender submits an application for DNA testing under division (A) of this section, the court shall make the determination as to whether the application should be accepted or rejected. * * * The court shall make the determination in accordance with the criteria and procedures set forth in

sections 2953.74 to 2953.81 of the Revised Code and, in making the determination, shall consider the application, the supporting affidavits, and the documentary evidence and, in addition to those materials, shall consider all the files and records pertaining to the proceedings against the applicant, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript and all responses to the application filed under division (C) of this section by a prosecuting attorney or the attorney general, unless the application and the files and records show the applicant is not entitled to DNA testing, in which case the application may be denied. The court is not required to conduct an evidentiary hearing in conducting its review of, and in making its determination as to whether to accept or reject, the application.

* * *

{¶ 15} R.C. 2953.74 sets forth criteria for acceptance of an application for DNA testing when there have been prior tests.  In pertinent part, it provides:

(A) If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code and a prior definitive DNA test has been conducted regarding the same biological evidence that the offender seeks to have tested, the court shall reject the offender's application. If an eligible offender files an application for DNA testing and a prior inconclusive DNA test has been conducted regarding the same biological evidence that the offender seeks to have tested, the court shall review the application and has the discretion, on a case-by-case basis, to either accept or reject the

application.   * * *

C) If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code, the court may accept the application only if all of the following apply:

(1) The court determines * * * that biological material was collected from the crime scene or the victim of the offense * * * and that the parent sample of that biological material against which a sample from the offender can be compared still exists at that point in time.

(2) * * *

(3) The court determines that, at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing, the identity of the person who committed the offense was an issue.

(4) The court determines that one or more of the defense theories asserted by the offender at the trial stage in the case described in division (C)(3) of this section or in a retrial of that case in a court of this state was of such a nature that, if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative.

(5) The court determines that, if DNA testing is conducted and an exclusion result is obtained, the results of the testing will be outcome determinative regarding that offender. * * *

**{¶ 16}**   To put this in plain language, a person may apply for DNA testing if he or she was convicted of a felony (as opposed to pleading guilty) and is serving a sentence

for that offense. Hayden is eligible to apply. If there has been a previous "definitive DNA test" of the same biological material, the application shall be rejected. If there has been a previous "inconclusive DNA test," the court has the discretion to accept the application, but it can only accept the application if (as applicable to this case) 1) the "identity of the person who committed the offense was at issue," 2) one or more of the defense theories asserted by the offender at trial was of such a nature that, if DNA testing produced an "exclusion result," that result will be outcome determinative, and 3) the court agrees with the defense theory that, if DNA testing produced an exclusion result, that exclusion result will be outcome determinative.

{¶ 17} "Inconclusive result" means that a definitive DNA result cannot be obtained. R.C. 2953.71(J). A "definitive DNA test" is one that clearly establishes that biological material from the perpetrator of the crime was recovered from the crime scene and whether or not the biological material is that of the eligible offender. R.C. 2953.71(U). Again, putting this into plain language, a test is inconclusive unless it clearly establishes that the DNA recovered from the crime scene and tested is or is not that of the applicant.

{¶ 18} Hayden's prior testing was all inconclusive, because the prior testing did not clearly establish that the DNA recovered from the victim was or was not his DNA. The DNA evidence presented at Hayden's postconviction proceedings could not exclude him as a source of the DNA from the sperm fraction of the vaginal aspirate, but it also could not conclusively establish that he was the source of that DNA. *Hayden VIII* at ¶ 6. In other words, the DNA evidence was "inconclusive"; sperm was present, but the DNA testing conducted at that time could neither confirm that it was from Hayden nor exclude him as the source. Therefore, Hayden's application cannot be summarily rejected.

{¶ 19} "Exclusion result" "means a result of DNA testing that scientifically precludes or forecloses the subject offender as a contributor of biological material recovered from the crime scene or victim in question, in relation to the offense for which the offender is an eligible offender * * *."   R.C. 2953.71(G).

{¶ 20} "Outcome determinative" means that had the results of DNA testing of the subject offender been presented at the trial of the subject offender requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the offender is an eligible offender and is requesting the DNA testing, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case, there is a strong probability that no reasonable factfinder would have found the offender guilty of that offense.   R.C. 2953.71(L).

{¶ 21}   Because Hayden's prior testing was inconclusive, the next question was whether a test would be outcome determinative.   This question is inextricably intertwined with whether the perpetrator's identity was at issue in the trial; if it was not in dispute that Hayden had intercourse with the victim, but only whether force was used, then neither his identity nor the presence of his DNA would be relevant.   However, with the facts before the trial court, there was not only a question as to the offense of rape, but also the identity of the perpetrator.   (The victim testified that she had not had sex with anyone, including the defendant, for more than five days before the offense.) Therefore, a test that definitively excludes Hayden would be outcome determinative.

{¶ 22} Hayden's most-recent application requested Y-STR (Y-chromosome short tandem repeat) testing. He argued that, if Y-STR DNA testing were done and,

additionally, if the DNA were compared with all DNA in the FBI's CODIS database, it could be established that the DNA collected from the victim belonged to someone else and, therefore, that he (Hayden) did not rape the victim. Hayden provided no support or substantive basis for his assertion that additional testing might be outcome determinative, apparently relying instead on a hope that the DNA testing will reveal a match to someone else in the database. He also did not prove by a preponderance of the evidence that, because of advances in DNA technology, there is a possibility of discovering new biological material. R.C. 2953.71(U). The trial court did not abuse its discretion in denying Hayden's application for DNA testing when the application did not offer any suggestion that new testing is likely to show definitively that he was not the source of DNA found on the victim.

{¶ 23} Hayden analogizes his case to *State v. Hightower*, 8th Dist. Cuyahoga Nos. 84248 and 84398, 2005-Ohio-3857, on the question of whether the DNA evidence was outcome determinative. In *Hightower*, however, the victim of the alleged rape was also murdered. The presence of semen was central to the State's allegation that the victim had been raped, because there was little other evidence, including physical evidence, to support this inference. (At the time of Hightower's conviction, DNA testing was not available.) A second man, who appears to have been an alternate suspect in the case, testified that Hightower had admitted to raping the victim. Under these facts, where there was no direct testimony as to the identity of the perpetrator, the presence of semen was central to the State's case. *Hightower* is not controlling in Hayden's case with respect to the relevance of the DNA evidence, because Hayden's conviction was not based on DNA evidence.

{¶ 24} Similarly, in *Emerick II*, 2d Dist. Montgomery No. 24215, 2011-Ohio-5543, upon which Hayden also relies, the victims of the crimes (aggravated robbery and murder) were dead, having been beaten to death in a bar. Witnesses placed Emerick near and inside the bar around the time of the murders. Blood samples and other "genetic material" were taken from the bar where the victims were killed, from Emerick's clothing, from a tire iron located in his car, from a hammer and screwdriver found at the scene (the suspected murder weapons), from the victims' fingernails, and from various other items found at the scene. The results of DNA tests were inconclusive, and no DNA evidence was presented at trial.

{¶ 25} Emerick subsequently filed several applications (under various versions of the statutes) for additional DNA testing. Some of his requests dealt with items which had been tested originally under the methods available at that time, and some requested testing of additional items (such as a letter to the police about the crime) which had not previously been tested. Emerick argued that, if an "additional [DNA] profile" could be identified on one or more key pieces of evidence, he would be exonerated. *Id.* at ¶ 14-15. In more than one Opinion, we concluded that Emerick's applications should have been granted because, if DNA of a third party had been found, or if Emerick's DNA had been excluded, the results would have been "outcome-determinative." *Emerick II* at ¶65; *State v. Emerick*, 170 Ohio App.3d 647, 2007-Ohio-1334, 868 N.E.2d 742, ¶ 12 (2d Dist.) (*Emerick I*).

{¶ 26} The holding in *Emerick*, like the holding in *Hightower*, is not analogous to Hayden's case. In *Emerick* and *Hightower*, the victims were unable to testify, and DNA evidence potentially played a critical role in establishing the defendant's presence at or

absence from the crime scene.    In Hayden's case, the central testimony was the victim's

testimony.    The trial court reasonably concluded that Hayden had not shown a sufficient

basis for additional DNA testing under the facts of his case.

**{¶ 27}**  The first and second assignments of error are overruled.

**{¶ 28}**  Hayden's third assignment of error states:

**The trial court abused its discretion when it overruled his motion for a**

**new trial on the grounds that the DNA was inconclusive and the issue**

**is res judicata.**

**{¶ 29}**  Hayden's motion for a new trial relied on four factors: 1) pubic hairs

recovered from the victim did not match his; 2) "the blood type could only be

attribute[able] to the alleged victim;" 3) the DNA test performed prior to trial was

inconclusive, and 4) this court has stated that "in terms of DNA, the identity of the

perpetrator remained at issue."    Hayden's statements mischaracterize the evidence and

the prior statements of this court and do not set forth grounds for us to conclude that the

trial court abused its discretion in denying his motion for a new trial.

**{¶ 30}** The granting or denying of a motion for a new trial based on newly

discovered evidence is within the sound discretion of the trial court, and this court will not

reverse the trial court's decision absent an abuse of discretion. *State v. Schiebel*, 55 Ohio

St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus.    An "abuse of discretion"

implies an arbitrary, unreasonable, or unconscionable attitude on the part of the court.

*State v. Ulery*, 2d Dist. Clark No. 2010-CA-89, 2011-Ohio-4549, ¶ 9, citing *State v.*

*Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

**{¶ 31}**  First, Hayden claimed that he was entitled to a new trial because pubic

hairs recovered from the victim "did not match." Evidence about the presence of pubic hairs, though available, was not introduced at trial, but this issue was raised in proceedings related to Hayden's 1996 petition for postconviction relief. At the hearing on the petition, evidence was offered "which permitted a conclusion that those hairs could have come from the body of the victim herself"; the victim is a Caucasian, Hayden is African-American, and the hairs "could only have come from a Caucasian donor." *Hayden III* at * 1. We previously held that Hayden could not demonstrate any prejudice in counsel's failure to use the public hair evidence at trial, and thus could not establish ineffective assistance of counsel, because the evidence "permit[ted] a finding that the victim herself could have been the source of the hairs," negating the inference that Hayden was not the perpetrator. *Hayden III* at *2.

{¶ 32} Hayden also raised arguments related to the pubic hair evidence in his 2001 petition for postconviction relief, wherein the trial court found that this evidence "had been in Hayden's possession for some time and that he had referred to the pubic hair combing in his 1996 petition for post-conviction relief." *Hayden IV* at ¶ 9. The trial court rejected his claim that this evidence was new, and no appeal was taken from that decision. *Id.* (2005-Ohio-4024, ¶ 9).

{¶ 33} Considering the prior consideration of Hayden's argument regarding pubic hair evidence by the trial court and this court, the trial court reasonably concluded that Hayden's assertions that the "pubic hairs did not match" did not warrant a new trial.

{¶ 34} Second, Hayden stated that "the blood type could only be attribut[able] to the alleged victim." In the direct appeal of Hayden's first petition for postconviction relief in 1999, and several times thereafter, we have noted "a similarity of blood types" between

Hayden and the victim, which appears to have contributed to the difficulty in reaching a definitive DNA test result under the methods available in and before 1998. *Hayden III* at *1; *see also Hayden IV* at ¶ 5; *Hayden V* at ¶ 3; *Hayden VII* at ¶ 2. At no point in this case has an expert testified, has the trial court held, or have we stated that the "blood type could only be attribute[able] to the victim."

{¶ 35} Third, Hayden states that, in 1999, the DNA test "was Ruled inconclusive by this court." In *Hayden III* at *2, we addressed an ineffective assistance of trial counsel argument, which was raised in Hayden's 1996 petition for postconviction relief and denied by the trial court. We stated:

> The trial court found the DNA evidence inconclusive with respect to whether Hayden perpetrated the rape, and for that reason insufficient to support a finding that had the DNA evidence been developed and introduced he probably would not have been convicted. We find no basis to disagree with those conclusions. Thus, prejudice is not demonstrated.

The inconclusiveness of the 1998 DNA testing is not disputed and is not newly discovered. That inconclusiveness, in itself, does not provide a basis for a new trial.

{¶ 36} Fourth, Hayden suggests that we have held that the identity of the perpetrator "remained at issue." Hayden's citation does not reflect the full context of that statement. Addressing whether the trial court could have found that res judicata barred Hayden's application for additional testing under the most recent version of the post-conviction DNA testing statute, we stated the following in *Hayden VIII*:

> Considering that Hayden disputed that he had any sexual contact with the victim, a trial court could reasonably conclude that, for purposes of the

post-conviction DNA testing statute, the identity of the perpetrator remained

at issue.

*Id.* at ¶ 37.

{¶ 37} We stated that the trial court **could** have reasonably concluded that the perpetrator of the rape remained at issue. We did not state that the trial court **had** so concluded, and we did not so conclude. The question was not yet resolved at that point; rather, the trial court had denied Hayden's application because he had not completed the proper form. When he resubmitted his request in 2013 – on the proper form – the trial court did address this issue, and it concluded that additional DNA testing would not be "outcome determinative" and that the identity of the perpetrator was not at issue. We found, supra, that the trial court did not abuse its discretion in denying Hayden's most recent application. Our prior statement that the trial court "could reasonably conclude" that the identity of the perpetrator remained at issue was not a finding that had actually been made, did not compel the trial court to make such a finding, and did not provide a basis for a new trial.

{¶ 38} None of the bases cited in Hayden's motion provided grounds for a new trial, and the trial court properly denied his motion.

{¶ 39} The third assignment of error is overruled.

{¶ 40} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

HALL, J., concurring:

{¶ 41} I agree with the majority's result that each of the appellant's assignments of

error should be overruled. I write separately to restate the opinion I expressed in my concurrence in *Hayden VIII,* 2012-Ohio-6183, ¶¶ 43-53, that Hayden's request for additional DNA testing is statutorily insufficient because prior testing does not reveal an inconclusive result and because, as the majority opinion here now reflects, further testing would not be outcome determinative. I reiterate:

> I * * * disagree with the majority's conclusion that "[t]he 1998 DNA test was 'inconclusive' for purposes of R.C. 2953.74(A) and did not constitute a 'definitive test.'" *Supra* at ¶ 27. The defendant was convicted in 1990. This court affirmed in 1991. He requested and obtained DNA testing in 1998. The result, under the current definition in R.C. 2953.71(I), was an "inclusion result" because the defendant was not excluded and was indicated to be a contributor of biological material. The 1998 lab report explained: "If the DNA originated from only two sources, the data are consistent with the DNA obtained from the sperm fraction of the vaginal aspirate being a mixture of the types obtained from the blood swatch labeled . . . [victim] and the types obtained from the blood swatch labeled Robert Hayden." Report of Laboratory Examination May 12, 1998.

> In 1998, the DNA testing commonly performed was referred to as HLA-DQ alpha and Polymarker analysis. Here is a re-creation the critical aspect of the report:

| | ALLELES DETECTED | | | | | |
|---|---|---|---|---|---|---|
| SAMPLE | DQA1 | LDLR | GYPA | HBGG | D7S8 | GC |
| vaginal aspirate (non-sperm fraction) | 4.1 | AB | A | A | AB | A |
| vaginal aspirate (sperm fraction) | 1.1,4.1,4. 2/3 [+] | AB | AB | AC | AB | ABC |
| [victim] | 4.1 | AB | A | A | AB | A |
| Robert Hayden | 1.1,4. 2/3 | AB | AB | C | A | BC |

[+]This sample contains DNA from at least 2 sources; the 1.2 HLA DQA1 type, if present may not be detected by this testing.

The above testing examined the alleles present at six loci on the human genome where the alleles can vary between individuals. Because DNA from one single individual should only show either a homozygous genotype (two of the same alleles, here listed as a single identifier) or heterozygous genotype (two different alleles), observation of three or more alleles at a loci in a sample indicates a mixture. The alleles detected for the sperm fraction of the vaginal aspirate at loci DQA1 and GC show three alleles indicating this sample was a mixture. This kind of result was common because frequently there was, and sometimes is, an inability to completely separate a sperm fraction from a non-sperm fraction of the evidenced DNA. But the important aspect of the test is that the defendant's genetic markers are present at each of the six loci examined. As one might expect, because this is a mixture, so are the victim's. The 1998 DNA report did not express the statistical significance of the result, only that the data are consistent with a mixture of Hayden's and the victim's DNA. But with the victim's DNA

markers excluded, the probability that the remaining DNA is from an unknown, unidentified individual who is not the defendant is perhaps one in thousands or more. In my view, this is not an "inconclusive result" under R.C. 2953.71(J).

With appropriate explanation, the 1998 result likely constitutes a prior "definitive DNA test" under R.C. 2953.71(U). I note this because if the defendant re-applies for testing, on the correct form, the trial court "may direct a testing authority to provide the court with information that the court may use in determining whether prior DNA test results were definitive or inconclusive and whether to accept or reject an application in relation to which there were prior inconclusive DNA test results." R.C. 2953.74(A). Indeed, even though the term "inconclusive" has crept into the record and prior decisions of the trial court and this court, neither the term nor the concept appears in the 1998 report. In my view, the 1998 test soundly confirms that the DNA discovered includes the defendant and provides no reason for further testing. Admittedly, the report states that "[n]o conclusion can be made regarding the vaginal swab." But that is because no DNA was detected on the swab. Further testing of the vaginal swab was, obviously, discontinued. The DNA that was found and tested from the vaginal aspirate was that of the victim and the defendant.

*Hayden VIII* at ¶ 46-49 (Hall, J., concurring).

{¶ 42} I am further compelled to comment, to avoid misapprehension of our decision, on the notion that because a trial court "has discretion on a case-by-case basis"

(R.C. 2953.74(D)) to accept or reject an eligible inmate's application for DNA testing that we review a trial court's ruling under an abuse-of-discretion standard. I agree that standard applies to those parts of a trial court's analysis that involve discretion. However, portions of the analysis whether to grant a DNA testing application involve only statutory application, and in my view those aspects should be subject to de novo review.

. . . . . . . . . . . . .

Copies mailed to:

Michele D. Phipps
Robert O. Hayden
Hon. Richard Skelton