[Cite as *State v. Hayden*, 2012-Ohio-6183.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                          :

      Plaintiff-Appellee             :               C.A. CASE NO.     24992

v.                                     :               T.C. NO.     90CR308

ROBERT O. HAYDEN                       :                  (Criminal appeal from
                                                          Common Pleas Court)

      Defendant-Appellant            :

                                       :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___28th___ day of ___December___, 2012.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ROBERT O. HAYDEN, No. 226375, Chillicothe Correctional Institute, P. O. Box 5500, Chillicothe, Ohio 45601
      Defendant-Appellant, pro se

. . . . . . . . . .

FROELICH, J.

      **{¶ 1}**   Robert O. Hayden appeals from a judgment of the Montgomery

County Court of Common Pleas, which denied his Motion for Discovery of DNA Evidence in Possession of Bureau of Criminal Investigation & Identification, his Motion to Proceed Pursuant to [R.C.] 2953.74(E) * * * and Sub. Senate Bill 77, and his Motion to Confirm Sentence. For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 2} Hayden has filed numerous appeals with this court. A detailed summary of the procedural history of his case will be helpful to our analysis of the issues now on appeal.

{¶ 3} In 1990, Hayden was convicted of rape with a prior aggravated felony specification and was sentenced to a prison term of ten to twenty-five years.[1] At trial, his former girlfriend testified that Hayden repeatedly raped her in the morning hours of December 31, 1989, after she refused to watch a pornographic movie with him; Hayden did not testify. Samples from the vaginal swab and vaginal aspirate collected from the victim were examined by the Miami Valley Regional Crime Lab; the results of the sperm fraction of the vaginal aspirate were said to be inconclusive because the victim and Hayden had similar blood types. Pubic hairs were also recovered from the victim. Due to Hayden's race, he was excluded as a source of the pubic hair, but it was possible that the hair belonged to the victim, who was a different race.

{¶ 4} On direct appeal, we affirmed and commented that "the credibility of the witnesses was the critical question before the trial court. The only direct evidence of the offense of rape came from the victim; [the evidence] to the contrary was hearsay produced

---

[1] Hayden had previously been convicted and sentenced on a charge of attempted rape. This Court affirmed that conviction and sentence. *State v. Hayden*, 2d Dist. Montgomery No. 9063, 1985 WL 7889 (Apr. 3, 1985). It appears that Hayden was on parole when he committed the instant offense of rape.

by those who at a later time heard [Hayden] simply deny the offense. The conflict of evidence of the offense is created by a self serving statement made to others, containing virtually no factual information." *State v. Hayden*, 2d Dist. Montgomery No. 12220, 1991 WL 215065 (Sept. 27,1991).

**{¶ 5}** Hayden filed a petition for post-conviction relief related to the pubic hairs. After the trial court denied the petition without a hearing, we reversed and remanded for a hearing on that petition. *State v. Hayden*, 2d Dist. Montgomery No. 16497,1997 WL 752614 (Dec. 5, 1997). The hearing was postponed pending DNA testing.

**{¶ 6}** In May 1998, polymerase chain reaction (PCR) DNA testing was performed on the vaginal aspirate (sperm fraction and non-sperm fraction) recovered from the victim, the victim's blood, and Hayden's blood. Hayden was excluded as the source of the DNA obtained from the non-sperm fraction of the vaginal aspirate, but he could not be excluded as a source of DNA from the sperm fraction. The trial court subsequently denied Hayden's petition for post-conviction relief, reasoning that the DNA results were "inconclusive; therefore even if Defendant's trial counsel committed an error by not introducing the pubic combings or having a DNA test conducted upon the fluids, this error cannot be said to have created a reasonable probability that, 'but for' the errors, the result of the trial would have been different." We affirmed the denial of Hayden's petition. *State v. Hayden*, 2d Dist. Montgomery No. 17649,1999 WL 960968 (July 16,1999).

**{¶ 7}** In June 2001, Hayden filed a motion requesting relief from judgment under Civ.R. 60(B) for fraud upon the court. The trial court denied the motion, which it treated as a second post-conviction relief petition, stating that the petition could not be entertained

absent a showing that Hayden was "unavoidably prevented" from discovering the facts upon which he relied. The trial court found that the evidence Hayden relied on (the pubic hair combing) had been in Hayden's possession for some time and that he had referred to the pubic hair combing in his 1996 petition for post-conviction relief. Because none of the evidence was new, the trial court dismissed the motion. No appeal was taken from that decision.

{¶ 8} Three years later, in 2004, Hayden filed a "motion for rehearing," asking the court to reconvene the hearings that took place in 1998 and 1999 on his first post-conviction petition. Hayden asserted that he was denied the opportunity to cross-examine witnesses about the DNA testing that was conducted by Cellmark Diagnostics. The trial court denied the request, finding that this was a matter that should have been raised during Hayden's 1999 appeal. We affirmed. *State v. Hayden*, 2d Dist. Montgomery No. 20657, 2005-Ohio-4024.

{¶ 9} In September 2004, Hayden filed an application for DNA testing under R.C. 2953.71 to R.C. 2953.83, which was enacted in 2003. One week later, the trial court rejected the application, noting that the 1998 tests were inconclusive and "introduction of the DNA test would not create a reasonable probability that the result would be different." This Court affirmed that decision. *State v. Hayden*, 2d Dist. Montgomery 20747, 2005-Ohio-4025. We noted that Hayden was an eligible inmate under the statute, but "[b]ecause the semen was previously tested and was inconclusive, the trial court had discretion to accept or reject Hayden's request for DNA testing of semen. *Hayden does not challenge the court's decision on this point*; instead he claims that the court should have tested the pubic hairs, which were Caucasian and were not tested prior to trial." (Emphasis

added.) *Id*. at ¶ 18. We agreed with the trial court that an exclusion result from the pubic hairs would not be outcome determinative of Hayden's guilt. We commented that "this was not a situation where the victim was attacked by a stranger or where the identity of the rapist was at issue." *Id*. at ¶ 30.

**{¶ 10}** In March 2006, Hayden filed a fourth petition for post-conviction relief, requesting a hearing on the basis that genetic testing conducted in 2005 in a paternity matter contradicted the test results performed by Cellmark. We affirmed the trial court's denial of his petition, reasoning that Hayden did not demonstrate that he was unavoidably prevented from discovering the facts contained in the 2005 genetic test. We stated: "The test simply indicates that Hayden does not share the necessary paternal markers to be the biological father of the subject child. It does not reveal when these results could have become available, or, more importantly, how the results relate to the victim or the crime for which Hayden was convicted." *State v. Hayden*, 2d Dist. Montgomery No. 21764, 2007-Ohio-5572, ¶ 18

**{¶ 11}** In March 2008, Hayden filed another petition for post-conviction relief, claiming that the MVRCL had withheld DNA evidence (the pubic hairs). In September 2008, Hayden filed a second application for DNA testing. In a single decision, the trial court denied both the petition and his application for DNA testing on the ground that the issues had "been previously litigated and decided" and were barred by res judicata. This Court affirmed. *State v. Hayden*, 2d Dist. Montgomery No. 23620, 2010-Ohio-3908. We noted, initially, that Hayden's request for DNA testing was not submitted on the appropriate form. *Id*. at ¶ 11. We further stated, in part:

An application for DNA testing is governed by statute. If DNA testing has been granted and an "inclusion" result is obtained, the state will not retest the DNA as the legislature has stated that it would create an atmosphere in which endless testing could occur. R.C. 2953.72(A)(6). If the court rejects a request for DNA testing due to the failure to meet the proper criteria, the court will not accept or consider similar applications. R.C. 2953.72(A)(7).

In this case, DNA testing was granted, and an inclusion result was obtained in 1998. See R.C. 2953.71(I) (DNA testing that scientifically cannot exclude the subject inmate is an inclusion result). Thus, the trial court did not find the test results to require a new trial. Appellant already proceeded through an appeal from that decision. As demonstrated above, appellant has been litigating the issue of DNA testing for years in various manners. Most notably, the trial court specifically rejected appellant's request for DNA testing in 2004 due to the failure to meet the proper criteria.

Additionally, this court has advised appellant that he cannot relitigate the propriety of the denial of his application for retesting and that even an exclusion result would not be outcome determinative under the facts of his case. See *State v. Hayden,* 2d Dist. No. 21764, 2007-Ohio-5572, ¶ 18-19. See, also, R.C. 2953.74(C)(3)-(5) (trial court cannot accept application for DNA testing unless identity was an issue at trial, a defense theory was that an exclusion result would be outcome determinative, and an exclusion result would be outcome determinative). The propriety of the trial court's past

decisions on this matter cannot be continually re-litigated.

{¶ 12}   In September 2010, Hayden asked the trial court to order a comparison of his DNA, which he contends is in the custody of the Bureau of Criminal lnvestigation & ldentification, with the unknown DNA collected from the rape victim.   The following month, the trial court denied the motion on res judicata grounds.   Hayden did not appeal this decision.

{¶ 13}   On April 15, 2011, Hayden filed a "Motion for Discovery of DNA Evidence in Possession of Bureau of Criminal Investigation & Identification."   Hayden's motion reiterated the arguments that he made in his September 2010 motion, but relied upon *Skinner v. Switzer*, _____ U.S. _____, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). The State filed a motion to dismiss, citing Hayden's failure to use the necessary request form, as required by R.C. 2953.72(A).   Hayden subsequently filed a "Motion to Proceed Pursuant to 2953.74(E) of the Ohio Revised Code and Sub. Senate Bill 771[,]" which reiterated his request for a DNA comparison.   Hayden additionally filed a "Motion to Confirm Sentence," in which he essentially complained that the records of the Chillicothe Correctional lnstitution do not reflect his correct sentence.

{¶ 14}   On December 12, 2011, the trial court denied the motion for discovery from BCI on the grounds that the issue of DNA testing had "been previously litigated and decided[,] * * * [and was barred by the doctrine of] res judicata."   The trial court further noted that Hayden had not submitted his request in the proper statutory form as required by R.C. 2953.72(A).   ln the same decision, the trial court overruled the motion to proceed under R.C. 2953.74(E) as moot.   It further found that Hayden's motion to confirm sentence

was also moot, as the termination entry issued by the trial court reflected the proper conviction and sentence and the trial court had no authority or jurisdiction over the prison's records.

{¶ 15}   Hayden appeals from the trial court's December 12, 2011 decision.

II.

{¶ 16}   Hayden's sole assignment of error states:

THE TRIAL COURT VIOLATED DEFENDANT'S DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION & ARTICLE I OF THE OHIO CONSTITUTION WHEN IT DENIED HIM ACCESS OF BIOLOGICAL EVIDENCE IN THE STATE'S CONTROL.

{¶ 17}   As recognized by the Supreme Court, "[s]ince 1998, DNA testing has advanced so far that 'a DNA profile may now be developed from items which were previously unsuccessfully typed or potentially not attempted due to the compromised or limited nature of the sample,' according to one of the expert witnesses. The PCR DNA testing used in this case in 1998 has been largely replaced by two newer technologies – short tandem repeat (or STR) testing and Y-chromosome STR (or Y-STR) testing." *State v. Prade,* 126 Ohio St.3d 27, 2010-Ohio-1842, 930 N.E.2d 287, ¶ 20.

{¶ 18}   Prompted by advances in DNA testing, in 2003, the Ohio legislature enacted Sub.S.B. 11, which established "a mechanism and procedures for the DNA testing of certain inmates serving a prison term for a felony or under a sentence of death." See former R.C. 2953.71 to 2953.83. This statutory scheme was amended in 2004 and 2006,

and again in 2010. The motions at issue were filed in 2011.

{¶ 19} The trial court "has discretion on a case-by-case basis" to accept or reject an eligible inmate's application for DNA testing. R.C. 2953.74(A). We therefore review the trial court's denial of a defendant's motion for further DNA testing for an abuse of discretion. An abuse of discretion implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1042, ¶ 130. Abuse of discretion usually involves decisions that are unreasonable rather than arbitrary or unconscionable. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 601, 553 N.E.2d 597 (1990).

{¶ 20} Hayden appeals from the denial of three different motions. The first motion – Hayden's Motion for Discovery of DNA Evidence in Possession of Bureau of Criminal Investigation & Identification – sought to have the DNA recovered from the victim compared with Hayden's own DNA, which is allegedly on file with BCI. The State addresses Hayden's motion as if he had sought new DNA testing of his and the unknown DNA pursuant to the post-conviction DNA testing statute. The State argues that Hayden's request for DNA testing was honored in 1998, and he has already litigated, unsuccessfully, whether an exclusion result would be outcome determinative. The trial court rejected Hayden's motion because he did not use the statutorily-required application form and because his request was barred by res judicata.

{¶ 21} On its face, Hayden's Motion for Discovery of DNA Evidence in Possession of Bureau of Criminal Investigation & Identification was not brought under the

post-conviction DNA testing statute. Hayden argued that he was entitled to a DNA comparison based on his right to due process and *Skinner v. Switzer*, _____ U.S. __, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). In *Skinner*, the United States Supreme Court addressed whether a defendant seeking DNA testing of crime-scene evidence could bring that claim as part of a civil rights action under 42 U.S.C. 1983 or, instead, whether the defendant was limited to raising such a claim in federal court in a petition for a writ of habeas corpus. The Supreme Court held that "a post-conviction claim for DNA testing is properly pursued in a § 1983 action." *Skinner*, 131 S.Ct. at 1293. However, the Court emphasized that its recent decision in *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. _____, 129 S.Ct. 2308, 174 L.Ed.2d (2009), "severely limits the federal action a state prisoner may bring from DNA testing. *Osborne* rejected the extension of substantive due process to this area * * * and left slim room for the prisoner to show that the governing state law denies him procedural due process." *Skinner* at 1293.

{¶ 22} Contrary to Hayden's assertion, *Skinner* does not provide new authority, such that Hayden could file a new motion for a comparison of his DNA with the sperm fraction of the vaginal aspirate. Rather, *Skinner* authorizes, under certain circumstances, the filing of a § 1983 claim in federal court.

{¶ 23} In its decision on Hayden's Motion for Discovery of DNA Evidence in Possession of Bureau of Criminal Investigation & Identification, the trial court stated that "an Application for DNA testing is required to be submitted on a form provided by the attorney general, accompanied by a signed acknowledgment, also a form provided by the attorney general, of different items. R.C. 2753.72(A). Defendant has not complied with

these requirements." The trial court correctly held that it was not required to accept Hayden's request for DNA testing when it was not submitted on the statutorily-required application form. On this basis, the trial court did not abuse its discretion in denying Hayden's latest motion for a comparison of his DNA at BCI with the unknown DNA recovered from the victim.

{¶ 24} The trial court further ruled that Hayden's motion was barred by the doctrine of res judicata. It stated: "[T]he issues that Defendant raises have been previously litigated and decided. This Defendant has been afforded all statutory and constitutional due process given to him by law. Therefore, the issues are res judicata."

{¶ 25} "The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as * * * estoppel by judgment, and issue preclusion, also known as collateral estoppel." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995). "Under the doctrine of res judicata, '[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Kelm v. Kelm,* 92 Ohio St.3d 223, 227, 2001-Ohio-168, 749 N.E.2d 299, quoting *Grava,* supra, at syllabus. Furthermore, "[r]es judicata operates to bar litigation of 'all claims which were or might have been litigated in a first lawsuit.'" (Emphasis omitted.) *Grava*, 73 Ohio St.3d at 382, quoting *Natl. Amusements, Inc. v. Springdale* , 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (1990).

{¶ 26} The State argues that the trial court properly rejected Hayden's request, when considered under the post-conviction DNA testing statutes, as barred by res judicata.

We begin with R.C. 2953.74(A), which now provides, in relevant part:

> If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code and a prior definitive DNA test has been conducted regarding the same biological evidence that the offender seeks to have tested, the court shall reject the offender's application. If an eligible offender files an application for DNA testing and a prior inconclusive DNA test has been conducted regarding the same biological evidence that the offender seeks to have tested, the court shall review the application and has the discretion, on a case-by-case basis, to either accept or reject the application. The court may direct a testing authority to provide the court with information that the court may use in determining whether prior DNA test results were definitive or inconclusive and whether to accept or reject an application in relation to which there were prior inconclusive DNA test results.

A "prior definitive DNA test" is defined as "a DNA test that clearly establishes that biological material from the perpetrator of the crime was recovered from the crime scene and also clearly establishes whether or not the biological material is that of the eligible offender." R.C. 2953.71(U). "Inconclusive" or "inconclusive result" is defined as "a result of DNA testing that is rendered when a scientifically appropriate and definitive DNA analysis or result, or both, cannot be determined." R.C. 2953.71(J).

{¶ 27} In this case, DNA testing was conducted in 1998, prior to the enactment of the post-conviction DNA testing statutes. At that time, Cellmark reported that "[n]o

conclusion [could] be made regarding the vaginal swab," although Hayden could not be excluded as the source of the sperm fraction of the vaginal aspirate. The 1998 DNA test was "inconclusive" for purposes of R.C. 2953.74(A) and did not constitute a prior "definitive test." Given the results of his 1998 DNA test, Hayden was statutorily eligible in 2011 to seek new DNA testing under the statute, provided that he met other statutory criteria.

{¶ 28} The State asserts, citing R.C. 2953.72(A)(6), that the 1998 DNA test was an inclusive result, which precluded additional testing. R.C. 2953.72(A) requires eligible offenders to seek DNA testing using a form prescribed by the attorney general. The statute requires that this form, which the offender must sign, include a number of "acknowledgments." One of the acknowledgments states:

> That, *if DNA testing is conducted with respect to an offender under sections 2953.71 to 2953.81 of the Revised Code*, the state will not offer the offender a retest if an inclusion result is achieved relative to the testing and that, if the state were to offer a retest after an inclusion result, the policy would create an atmosphere in which endless testing could occur and in which post-conviction proceedings could be stalled for many years.

(Emphasis added.) R.C. 2953.72(A)(6).

{¶ 29} In other words, R.C. 2953.72(A)(6) requires the offender to agree, when submitting his request for DNA testing under the statute, that if the application is granted and the DNA testing produces an inclusion result, the offender is not entitled to a retest. (An "inclusion result" occurs when the result "scientifically cannot exclude, or that holds

accountable, the subject offender as a contributor of biological material recovered from the crime scene or victim in question." R.C. 2953.71(A)(I).) R.C. 2953.72(A) does not govern who is statutorily eligible to obtain a DNA test under the statute or under what circumstances an application may be granted.

{¶ 30} Hayden's 1998 DNA test produced an "inclusion result" (i.e., he could not be excluded), as defined by the statute. However, that test was not conducted under R.C. 2953.71 to R.C. 2953.83, which did not yet exist in 1998. And, as stated above, the post-conviction DNA testing statute was enacted for the purpose of allowing additional DNA testing due to the advancements in DNA testing, which could provide actual, scientific definitive results for many offenders. Accordingly, R.C. 2953.72(A)(6) does not preclude Hayden's request for DNA testing.

{¶ 31} We recognize that the State's argument mirrors our analysis in *State v. Hayden*, 2d Dist. Montgomery No. 23620, 2010-Ohio-3908. In general, the law of the case doctrine requires us to follow prior opinions of our court in the same case. *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984) (the law of the case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels."). The doctrine promotes consistency of results in a case, finality in litigation by settling the issues, and preservation of the structure of superior and inferior courts as designed by the Ohio Constitution. *Id.* However, "[t]he doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." *Id.*

{¶ 32} In this case, we decline to follow our analysis in our 2010 opinion. Our prior opinion in Hayden's case misapplied R.C. 2953.72(A)(6) and is inconsistent with our more recent opinion in *State v. Emerick*, 2d Dist. Montgomery No. 24215, 2011-Ohio-5543, which recognized that R.C. 2953.74 contemplated successive applications for DNA testing. In *Emerick*, we interpreted the 2006 version of the post-conviction DNA testing statute and discussed that res judicata should not be applied in a perfunctory manner, since R.C. 2953.74 permits, under certain circumstances, successive applications for DNA testing. We stated:

"If DNA testing has the proven ability to 'exonerate[ ] wrongly convicted people,' we can perceive no viable argument that matters of judicial economy should supersede the law's never-ending quest to ensure that no innocent person be convicted. The refinement of DNA testing has shown that law and science are intersecting with increasing regularity. When scientific advances give the courts the tools to ensure that the innocent can go free, those advances in science will necessarily dictate changes in the law." [*State v. Ayers*, 185 Ohio App.3d 168, 2009-Ohio-6096, 923 N.E.2d 654, ¶ 24 (citation omitted).]

Significantly, R.C. 2953.74 permits successive applications for DNA testing by addressing circumstances when DNA testing may be ordered, even though the same biological material has already been tested. In addition to changing the definition of "outcome determinative," the 2006 changes to the post-conviction DNA testing statute increase the number of eligible applicants, facilitate the granting of applications for DNA testing, and allow unidentified DNA to be entered in the Combined DNA Index System

(CODIS) for matching with known felons. These changes support a conclusion that this court should permit successive applications for DNA testing, even when the biological materials addressed in the successive application could have been raised in a prior application, provided that all the statutory criteria are met.

*State v. Emerick*, 2d Dist. Montgomery No. 24215, 2011-Ohio-5543, ¶ 31-32.

{¶ 33} Even if the trial court had entertained Hayden's request for DNA testing, the court could grant Hayden's request only if he satisfied the criteria set forth in R.C. 2953.74(C). Among those requirements, Hayden was required to demonstrate that "the identity of the person who committed the offense was an issue" at trial and that the defense theory at trial was such that "if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative." *Id.* Under R.C. 2953.71(L), "outcome determinative" means:

* * * that had the results of DNA testing of the subject offender been presented at the trial of the subject offender requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the offender is an eligible offender and is requesting the DNA testing, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case as described in division (D) of section 2953.74 of the Revised Code, there is a strong probability that no reasonable factfinder would have found the offender guilty of that offense or, if the offender was sentenced to death relative to that

offense, would have found the offender guilty of the aggravating circumstance or circumstances the offender was found guilty of committing and that is or are the basis of that sentence of death.

**{¶ 34}** In 2005, we agreed with the trial court that an exclusion result from the pubic hairs would not be outcome determinative of Hayden's guilt, noting that "this was not a situation where the victim was attacked by a stranger or where the identity of the rapist was at issue." *Id*. at ¶ 30. In 2010, we told Hayden that he "cannot relitigate the propriety of the denial of his application for retesting and that even an exclusion result would not be outcome determinative under the facts of his case." However, in making this statement, we applied the post-conviction relief statute only, did not analyze R.C. 2593.74, and relied on *State v. Hayden,* 2d Dist. No. 21764, 2007-Ohio-5572, which addressed the results of Hayden's paternity test.

**{¶ 35}** Hayden's first request for DNA testing of the semen under the post-conviction DNA testing statute was filed in 2004, prior to substantive changes in the statute. Significantly, prior to July 2006, "outcome determinative" was defined in the post-conviction DNA testing statutes to mean: "[H]ad the results of DNA testing been presented at the trial of the subject inmate requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the inmate is an eligible inmate and is requesting the DNA testing * * *, *no reasonable factfinder would have found the inmate guilty of that offense * * *.*" (Emphasis added.) Former R.C. 2953.71(L). This definition applied to Hayden's requests for DNA testing filed prior to March 2008. Our 2010 opinion applied the doctrine of res judicata based on opinions that applied a different

legal standard.

{¶ 36} Our more recent statements that an "exclusion result" would not be "outcome determinative" and that identity was not at issue are also inconsistent with our earlier opinions in Hayden's case, in which we noted that the victim provided the only direct testimony regarding what occurred during the rape, that Hayden did not testify, and the testimony on his behalf amounted to a general denial. *See State v. Hayden*, 2d Dist. Montgomery No. 12220, 1991 WL 215065 (Sept. 27,1991). Although Hayden did not testify at his trial, the State's evidence included the testimony of former Dayton Police Detective David Lantz, Hayden's former parole officer, Timothy Jones, and Hayden's parole officer at the time of the offense, Patrick Cooper, all of whom interviewed Hayden after the rape. Hayden told all three that he had gone out drinking on the night of December 30 and returned to the apartment he shared with the victim in the early morning hours, at which time he went to sleep. Lantz, Jones, and Cooper each testified that Hayden emphatically denied having any sexual contact or intercourse with the victim on December 31, 1989.

{¶ 37} In short, we find no prior ruling by this court that applied the facts at trial to the current version of the post-conviction DNA testing statute. Considering that Hayden disputed that he had any sexual contact with the victim, a trial court could reasonably conclude that, for purposes of the post-conviction DNA testing statute, the identity of the perpetrator remained at issue. Accordingly, when considering Hayden's motion as one brought under the post-conviction DNA testing statute, the trial court erred in denying Hayden's motion under the doctrine of res judicata, and nothing precludes Hayden from renewing his request using the appropriate statutory form. The trial court would review any

such request using its sound discretion.

{¶ 38}    Hayden's second motion at issue asked the court to proceed under R.C. 2953.74(E) and Sub.S.B. 77 (the 2010 amendment to the post-conviction DNA testing statute).  R.C. 2953.74(E), which was added in Sub.S.B. 262, effective July 11, 2006, provides:[2]

> If an eligible offender submits an application for DNA testing under section 2953.73[3] of the Revised Code *and the court accepts the application*, the eligible offender may request the court to order, or the court on its own initiative may order, the bureau of criminal identification and investigation to compare the results of DNA testing of biological material from an unidentified person other than the offender that was obtained from the crime scene or from a victim of the offense for which the offender has been approved for DNA testing to the combined DNA index system maintained by the federal bureau of investigation. * * *

(Footnote and emphasis added.)

{¶ 39}   The trial court denied Hayden's motion for a DNA comparison (i.e., did not "accept the application"), and we have concluded that the trial court did not abuse its discretion in doing so.   The trial court did not err in denying as moot Hayden's accompanying request to compare the new test results to that of other known felons in CODIS.

---

[2]  In 2010, "offender" was substituted for "inmate."

[3]  R.C. 2953.73 describes the procedure for submitting an application.

{¶ 40} Finally, Hayden appeals the denial of his motion to confirm his sentence. However, his arguments on appeal are directed solely to the denial of his request for a DNA comparison. Accordingly, Hayden has waived any claim that the trial court erred in denying his motion to confirm his sentence.

{¶ 41} Hayden's assignment of error is overruled.

III.

{¶ 42} For the reasons set forth above, the trial court's judgment will be affirmed. . . . . . . . . . .

GRADY, P.J. concurs.

HALL, J., concurring in judgment:

{¶ 43} I agree that the defendant did not properly apply for new DNA testing because he did not use the form required by R.C. 2953.72(A). On that basis, the trial court's judgment denying additional testing should be affirmed. I further note that this is not a new problem. The defendant's last application for DNA testing was not on a proper form. See *State v. Hayden*, 2d Dist. Montgomery No. 23620, 2010-Ohio-3908, ¶ 11. Because we find that the trial court correctly rejected the improperly filed application, the remainder of the majority opinion is dicta. Nevertheless, I write separately because I disagree with several aspects of that opinion.

{¶ 44} The majority opinion rejects the law-of-the-case doctrine and res judicata, stating: "We decline to follow our analysis in our 2010 opinion." *Supra* at ¶ 32. But the trial court, and this court, have repeatedly held that even if additional testing excluded this very defendant, he has not shown that the result would be different. Most recently, this court explained:

Additionally, this court has advised appellant that he cannot relitigate the propriety of the denial of his application for retesting and that even an exclusion result would not be outcome determinative under the facts of his case. See *State v. Hayden*, 2d Dist. No. 21764, 2007-Ohio-5572, ¶18-19. See, also, R.C. 2953.74(C)(3)-(5) (trial court cannot accept application for DNA testing unless identity was an issue at trial, a defense theory was that an exclusion result would be outcome determinative, and an exclusion result would be outcome determinative). The propriety of the trial court's past decisions on this matter cannot be continually re-litigated.

*State v. Hayden*, 2d Dist. Montgomery No. 23620, 2010-Ohio-3908, ¶ 14.

{¶ 45}   I agree with the majority that res judicata does not always bar a DNA re-test. But it does preclude Hayden from re-litigating the repeated conclusion that identity was not the issue in this case, that an exclusionary test would not be outcome determinative and, thus, that it would not result in a retrial.

{¶ 46}   I also disagree with the majority's conclusion that "[t]he 1998 DNA test was 'inconclusive' for purposes of R.C. 2953.74(A) and did not constitute a 'definitive test.'" *Supra* at ¶27. The defendant was convicted in 1990. This court affirmed in 1991. He requested and obtained DNA testing in 1998. The result, under the current definition in R.C. 2953.71(I), was an "inclusion result" because the defendant was not excluded and was indicated to be a contributor of biological material.  The 1998 lab report explained: "If the DNA originated from only two sources, the data are consistent with the DNA obtained from the sperm fraction of the vaginal aspirate being a mixture of the types obtained from the blood swatch labeled . . . [victim] and the types obtained from the blood swatch labeled

Robert Hayden." Report of Laboratory Examination May 12, 1998.

{¶ 47} In 1998, the DNA testing commonly performed was referred to as HLA-DQ alpha and Polymarker analysis. Here is a re-creation of the critical aspect of the report:

| ALLELES DETECTED | | | | | | |
|---|---|---|---|---|---|---|
| SAMPLE | DQA1 | LDLR | GYPA | HBGG | D7S8 | GC |
| vaginal aspirate (non-sperm fraction) | 4.1 | AB | A | A | AB | A |
| vaginal aspirate (sperm fraction) | 1.1,4.1,4. 2/3 [+] | AB | AB | AC | AB | ABC |
| [victim] | 4.1 | AB | A | A | AB | A |
| Robert Hayden | 1.1,4. 2/3 | AB | AB | C | A | BC |

[+]This sample contains DNA from at least 2 sources; the 1.2 HLA DQA1 type, if present may not be detected by this testing.

{¶ 48} The above testing examined the alleles present at six loci on the human genome where the alleles can vary between individuals. Because DNA from one single individual should only show either a homozygous genotype (two of the same alleles, here listed as a single identifier) or heterozygous genotype (two different alleles) , observation of three or more alleles at a loci in a sample indicates a mixture. The alleles detected for the sperm fraction of the vaginal aspirate at loci DQA1 and GC show three alleles indicating this sample was a mixture. This kind of result was common because frequently there was, and sometimes is, an inability to completely separate a sperm fraction from a non-sperm fraction of the evidenced DNA. But the important aspect of the test is that the defendant's genetic markers are present at each of the six loci examined. As one might expect, because this is a

mixture, so are the victim's. The 1998 DNA report did not express the statistical significance of the result, only that the data are consistent with a mixture of Hayden's and the victim's DNA. But with the victim's DNA markers excluded, the probability that the remaining DNA is from an unknown, unidentified individual who is not the defendant is perhaps one in thousands or more. In my view, this is not an "inconclusive result" under R.C. 2953.71(J).

{¶ 49} With appropriate explanation, the 1998 result likely constitutes a prior "definitive DNA test" under R.C. 2953.71(U). I note this because if the defendant re-applies for testing, on the correct form, the trial court "may direct a testing authority to provide the court with information that the court may use in determining whether prior DNA test results were definitive or inconclusive and whether to accept or reject an application in relation to which there were prior inconclusive DNA test results." R.C. 2953.74(A). Indeed, even though the term "inconclusive" has crept into the record and prior decisions of the trial court and this court, neither the term nor the concept appears in the 1998 report. In my view, the 1998 test soundly confirms that the DNA discovered includes the defendant and provides no reason for further testing. Admittedly, the report states that "[n]o conclusion can be made regarding the vaginal swab." But that is because no DNA was detected on the swab. Further testing of the vaginal swab was, obviously, discontinued. The DNA that was found and tested from the vaginal aspirate was that of the victim and the defendant.

{¶ 50} I further believe the trial court's denial of re-testing was correct because the defendant does not meet the statutory criteria under R.C 2953.74(A). That provision obligates a court to reject a re-test application if a prior definitive test has been conducted. I believe that is the case here. But, assuming it is not, only if a prior inconclusive test has been conducted can the court even consider a re-test application. *Id.* In considering the

application, "the court may accept the application only if all of the following apply:"

> * * * (3) The court determines that, at the trial stage in the case * * * the identity of the person who committed the offense was an issue.; (4) * * * that one or more defense theories asserted by the offender at the trial stage * * * was of such a nature that, if DNA testing is conducted and an exclusion is obtained, the exclusion result will be outcome determinative; [and] (5) [t]he court determines that, if DNA testing is conducted and an exclusion result is obtained, the results will be outcome determinative regarding that offender.

R.C 2953.74(C).

{¶ 51} This court previously found that Hayden failed to meet these criteria. *See State v. Hayden*, 2d Dist. Montgomery No. 23620, 2010-Ohio-3908, ¶14. My examination of the quoted factors reveals that the defendant does not meet any of them. Each one independently requires rejection of his re-test request.

{¶ 52} Finally, the majority indicates that identity of the offender was at issue because Hayden denied having sex with the victim. But there is no admissible evidence of such a denial. Hayden did not testify at his trial. Statements that he denied sexual conduct with the victim were elicited from a police detective and two parole officers. This testimony is unquestionably "hearsay produced by those who at a later time heard appellant simply deny the offense." *State v. Hayden*, 2d Dist. Montgomery No. 12220, 1991 WL 215065, *2 (Sept. 27, 1991); *see also State v. Beeson*, 2d Dist. Montgomery No. 19312, 2002-Ohio-4341, ¶56 ("Defendant's out-of-court exculpatory statement that he sought to introduce through the testimony of other witnesses was clearly offered to prove the truth of the matter asserted * * * and constitutes hearsay."). As such, it was inadmissible under

Evid.R. 802.

{¶ 53}  It is undeniably tempting to use our judicial power to permit Hayden—or any convicted defendant—to obtain new or additional DNA testing. DNA evidence can be a powerful protector of the innocently imprisoned. At the same time, however, we cannot ignore the requirements established by the General Assembly in R.C. 2953.74. Because Hayden has not met those requirements, in my view the trial court correctly denied his application for additional testing.

. . . . . . . . . .

Copies mailed to:

Michele D. Phipps
Robert O. Hayden
Hon. Frances E. McGee