[Cite as *State v. Quinn*, 2018-Ohio-4536.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                                    Court of Appeals No. L-18-1055

      Appellee                                            Trial Court No. CR0200502529

v.

Jeremy J. Quinn, Jr.                                      **DECISION AND JUDGMENT**

      Appellant                                          Decided:  November 9, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Jeremy J. Quinn, Jr., pro se.

* * * * *

**MAYLE, P.J.**

### Introduction

{¶ 1} At issue in this accelerated, pro se, appeal is an order by the Lucas County Court of Common Pleas that denied defendant-appellant Jeremy J. Quinn, Jr.'s application for DNA

testing. The trial court denied the application on multiple grounds. On appeal, Quinn argues that the court erred in denying his application and that he received ineffective assistance of counsel during his 2005 trial for rape and kidnapping. For the reasons set forth below, we affirm the judgment of the lower court.

**Facts and Procedural History**

{¶ 2} Following a jury trial, Quinn was convicted of one count of kidnapping (a violation of R.C. 2905.01(A)(4)) and six counts of rape (violations of R.C. 2907.02(A)(2)). Quinn appealed his conviction, and we affirmed in *State v. Quinn*, 6th Dist. Lucas No. L-06-1003, 2008-Ohio-819 (hereinafter *"Quinn I"*). Following an order by the Sixth Circuit Court of Appeals that he be resentenced, the trial court sentenced Quinn to ten years in prison, per count, with each sentence to be served consecutively, for an aggregate prison term of 70 years. *Quinn v. Ohio Dept. Rehab. And Corr.,* 6th Cir. No. 10-3490, 2012 U.S. App. LEXIS 27102 (Jan. 18, 2012). We upheld the sentence in *State v. Quinn,* 6th Dist. Lucas No. L-12-1242, 2014-Ohio-340.

{¶ 3} Currently at issue is the trial court's denial of Quinn's January 25, 2018 application for DNA testing. In the application, Quinn requests that semen "found inside" the victim's "vaginal vault" be tested for DNA. The evidence was gathered by way of a "swab" during an examination of the victim after the attack. Quinn claims that the evidence was "suppressed and withheld" during his trial and, if tested, it would prove that he is "innocent."

{¶ 4} On February 20, 2018, the trial court denied the application. It found,

2.

Before the court is Defendant's successive "Application for DNA Testing," filed January 25, 2018 and the state's response, filed February 6, 2018. The court finds that Defendant has failed to utilize the prescribed form. The court finds that this same motion was denied by Order with Findings of Fact and Conclusions of Law in August of 2010. Moreover, R.C. 2953.74(C)(3) requires that the identity of the perpetrator must have been in issue at trial; in this case, it was clearly not. Application denied.

{¶ 5} Quinn appealed, and asserts four assignments of error for our review:

Assignment of Error No. One: The state withheld key exculpatory evidence to deny Appellant a due process of law in violation of the Ohio Constitution Article I section 10 and 16 and of the 5th Amendment of the U.S. Constitution and 14th Amendment of the U.S. Constitution. [Sic].

Assignment of Error No. Two: The trial court erred in not granting Appellant application for DNA testing. [Sic].

Assignment of Error No. Three: The trial court erred in its judgment to dismiss Appellant application for DNA testing for not useing the prescribed form. [Sic].

Assignment of Error No. Four: Trial counsel denied Appellate effective assistance of counsel. When counsel failed to object to the state withholding D.N.A. evidence. In violation of the Ohio Constitution Art. 1,

Section 10 and 16, and the 6 and 14th Amendment of the United States Constitution.  [Sic].

## Law and Analysis

{¶ 6} We address Quinn's first and second assignments together, in reverse order.

{¶ 7} In his second assignment of error, Quinn alleges that the trial court erred in denying his application.  This is Quinn's fourth application in which he requests DNA testing of the semen collected from the victim's "vaginal vault."  In the first application, filed on April 19, 2010, Quinn requested that the state test "seminal fluid that was withheld and suppressed that was found inside the allege victim vaginal area and vault." [Sic].  The trial court denied the application.  (Findings of Fact, Conclusions of Law and Judgment Entry, 7/12/10).  Quinn did not appeal.  He filed a second and a third application, dated August 2, 2010 and December 3, 2013, respectively, which again requested DNA testing of "seminal fluid" taken from the victim's "vaginal vault."  The trial court denied the former application on August 9, 2010.  Quinn's appeal of that order was dismissed on timeliness grounds.  *State v. Quinn,* 6th Dist. Lucas No. L-10-1262 (Sept. 23, 2010).  It is unclear from the docket whether the trial court ruled on the 2013 application.

{¶ 8} In his first assignment of error, Quinn alleges that the prosecutor "withheld" and "suppressed" the fact that semen was found inside the victim's vagina.  Quinn claims that he learned of the evidence at trial, and he speculates that if it had been tested for DNA, it would have shown DNA from an "unknown man," thereby eliminating him as

4.

the rapist.[1]  Quinn made the exact argument in his first application, back in 2010, when he claimed that "the prosecution withheld and suppressed seminal fluid found inside the vaginal vault and area and did not tell the defendant [until the trial]."  [Sic].

{¶ 9} "A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."  *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus.  Because Quinn's current application for DNA testing concerns the same item at issue as his first application, i.e. seminal fluid taken from the victim's vaginal vault, we find that it was properly denied by the trial court on res judicata grounds.  *Accord, State v. Caulley,* 10th Dist. Franklin No. 09AP-172, 2009-Ohio-5801, ¶ 13-14 ("To the extent defendant's instant request for additional DNA testing concerns items at issue in *Caulley III*, this court has determined his request is without merit, and it is thus barred by res judicata.")  *See also State v. Foster,* 10th Dist. Franklin No. 17AP-106, 2017-Ohio-5820 (Applying res judicata to reject defendant's application for DNA testing of the same items – a knife and a screw driver – at issue in defendant's previous application).

{¶ 10} Even if Quinn's current request for additional DNA testing was not barred by res judicata, he also failed to establish that he is entitled to further post-conviction testing under the criteria set forth in the DNA testing statute.  This court reviews a trial

---

[1] For the record, the trial court granted Quinn $1,500 for the purpose of engaging his own DNA expert, and the state provided the defense with its DNA expert's report 18 days before trial.

court's decision to grant or deny an application for DNA testing for an abuse of discretion. *See* R.C. 2953.74(A) (The trial court "has discretion on a case-by-case basis" to accept or reject an application for DNA testing). An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 11} The trial court found that Quinn failed to satisfy R.C. 2953.74(C)(3) which provides that "the court may accept the application [for DNA testing] only if * * *: (3) [t]he court determines that, at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing, *the identity of the person who committed the offense was an issue*." (Emphasis added.)

{¶ 12} Here, the trial court denied Quinn's application because Quinn's identity, as the rapist, was not at issue. We agree. According to the record, Quinn kidnapped the female victim, aged 16, at knifepoint from her driveway on the afternoon of July 18, 2005, by getting into, and commandeering, her car. Quinn had been released from prison just four days before, and the two had never met. Quinn drove the victim to a secluded area and repeatedly raped her before returning her to her home. The victim immediately reported the rapes to her neighbor who called the police. Before the victim left for the hospital, she identified Quinn as her attacker based upon a photo the police showed her. She identified Quinn a second time later at the hospital when shown a photo array by police. Quinn was taken into custody that day. A knife, matching the description

6.

provided by the victim, was recovered by police following a "pat down" of Quinn's father.

{¶ 13} Quinn testified in his own defense. He claimed that he first met the victim at a restaurant, on the day of his release from prison. On the day in question, Quinn claimed that he and the victim were at her house kissing and that they disrobed – down to their underwear. Quinn testified that the two engaged in sexual activity but not sexual intercourse. Quinn claims that he left, over the victim's protestations, when she went to get a condom and he saw the victim's driver's license which showed that she was only 16 years old.

{¶ 14} Linsey Windau, a forensic scientist in the serology DNA section of the Ohio Bureau of Criminal Identification and Investigation ("BCI"), testified that she performed serological tests on the sexual assault evidence collected from the victim. Windau testified that semen was found on the victim's vaginal *swabs,* but not the vaginal *smear slides*. Semen was also found on the inside of the "crotch" of the victim's underwear. Windau offered the following testimony regarding the DNA testing of the stain on the victim's underwear:

> For the stain on the crotch of the underwear in the non-sperm fraction there was a mixture of the profiles that were generated that were consistent with being a mixture from [the victim] -- she was major contributor -- and [Quinn] was the minor contributor. On the sperm fraction of that same stain there was a mixture of [Quinn] being the major

7.

contributor, and * * * [the victim] and the unknown individual being minor contributors.

{¶ 15} Windau testified on cross-examination that she did not test the vaginal swab for DNA because she received a stronger indicator from the stain on the underwear. She also testified that she did not know whether the unknown person's DNA on the underwear stain was male or female. When asked how the DNA of an unknown individual could have gotten there, Windau agreed that it could have been there since before the victim put her underwear or conversely, it could have been from a sneeze or a cough in the room when hospital staff took off her underwear to put it in the rape kit. Even though there is an unknown individual's DNA in the sample, it does not change the result that Quinn's DNA was a match.

{¶ 16} Quinn misstates the evidence in this case. He claims that semen of "an unknown man was found inside [the victim's] vagina" and "the semen inside [the victim] shows she engaged in sex with someone else on July 18, 2005." There is no evidence of "an unknown man," and the only seminal fluid identified in this case belonged to Quinn. Moreover, the issue at trial was whether Quinn raped the victim. The victim testified that he did; Quinn testified that their sexual activity was consensual. Thus, Quinn's identity as the perpetrator was not at issue in the case, and therefore, he could not show that R.C. 2953.74(C)(3) applied. *Accord State v. Williamson*, 8th Dist. Cuyahoga No. 106480, 2018-Ohio-2226, ¶ 11. ("Even if DNA from another person was found, [the defendant] would not be completely exonerated because the victim testified he raped her over 40

8.

times. Williamson's identity was not at issue; he denied raping the victim and was convicted of 12 counts of rape."). *See also State v. Madden*, 10th Dist. Franklin No. 08AP-172, 2008-Ohio-2653, ¶ 11 ("In this case, however, the identity of the victim's perpetrator was not at issue, but, rather, whether appellant had, in fact, committed the crimes of which he was accused."). For all of these reasons, we find Quinn's first and second assignments of error not well-taken.

{¶ 17} In his third assignment of error, Quinn complains that his application should not have been denied for his failure to use the correct form. R.C. 2953.73(A) requires an applicant to "submit an application for DNA testing on a form prescribed by the attorney general for this purpose." Here, Quinn handwrote his request for DNA testing and complains that the trial court should have accepted it because his previous hand-written filings were accepted in the past. Quinn claims that he "'does not' always have" access to the proper forms at the prison where he is serving his sentence.

{¶ 18} Upon review, we see no evidence that the trial court abused its discretion in denying Quinn's application for failing to use the correct form. *Accord, State v. Hayden,* 2d Dist. Montgomery No. 24992, 2012-Ohio-6183, ¶ 23 ("The trial court correctly held that it was not required to accept Hayden's request for DNA testing when it was not submitted on the statutorily-required application form. On this basis, the trial court did not abuse its discretion in denying Hayden's latest motion for a comparison of his DNA at BCI with the unknown DNA recovered from the victim."). Quinn's third assignment of error is not well-taken.

9.

**{¶ 19}** In his fourth assignment of error, Quinn claims that his trial counsel provided ineffective assistance of counsel by failing to object to the state's "withholding of DNA evidence that [was] exculpatory in nature, and in violation of [his] Due Process rights." Quinn's claim of deficient representation occurred during his trial and is part of the trial record, i.e. counsel's failure to object when the state DNA expert testified regarding the presence of semen on the vaginal swab. Therefore, Quinn could have raised the issue in his direct appeal of his conviction. Indeed, Quinn raised multiple, other instances of ineffective assistance of counsel in that appeal (all of which we rejected). *Quinn I,* 6th Dist. Lucas No. L-06-1003, 2008-Ohio-819, at ¶ 58-79. Res judicata prohibits Quinn from raising this issue now. *State v. Kelm,* 6th Dist. Wood No. WD-11-024, 2013-Ohio-202, ¶ 9. ("The ineffective assistance of counsel claim relies on evidence in the record and, consequently, is one that could have been raised by appellant on direct appeal from the judgment of conviction. * * * Under res judicata a convicted defendant is barred from subsequently litigating issues that were raised or could have been raised at trial or on direct appeal from a judgment of conviction."). Therefore, Quinn's fourth assignment of error is not well-taken.

**{¶ 20}** Upon review, we find Quinn's assignments of error not well-taken. We affirm the decision of the trial court to deny Quinn's application for DNA testing. Quinn is ordered the pay the costs associated with this appeal pursuant to App.R. 24.

Judgment affirmed.

10.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.